[No. 4128. Decided July 5, 1902.]

## WALTER V. R. CROOKER, *Appellant,* v. PACIFIC LOUNGE and MATTRESS COMPANY, *Respondent.*

INJURIES TO SERVANT — LIABILITY OF MASTER — DEFECTIVE APPLIANCES — QUESTION FOR JURY.

Whether or not the master is chargeable with negligence in requiring the servant to operate a ripsaw without the use of a guard or spreader to lessen the danger of flying slivers and pieces of wood is a question for the jury, although the ripsaw

may be the same as those in ordinary use elsewhere, if experience has shown the advantage of such a protective device as the spreader, leading to its general adoption in other factories, and the master had knowledge of its desirability and had promised to supply it.

SAME — PROMISE TO REPAIR — ASSUMPTION OF RISK.

The continuance of a servant in the operation of defective machinery after the promise of the master to remedy it does not amount to an assumption of the risk, if the servant had reason to rely upon the performance of the promise within a reasonable time, and whether he could or not entertain a reasonable expectation thereof would be a question for the jury.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM O. CHAPMAN, Judge. Reversed.

*Govnor Teats,* for appellant.

*William P. Reynolds* and *Herbert S. Griggs* (*Arthur Remington,* of counsel), for respondent.

The opinion of the court was delivered by

REAVIS, C. J.—Action claiming damages for personal injuries. The complaint states, substantially, that plaintiff is a minor nineteen years of age, and the action is brought by his father and guardian; that in April, 1899, plaintiff's father, who was working for the defendant corporation in its manufacturing establishment in Tacoma, sought employment for plaintiff in defendant's establishment; that plaintiff at that time was used to operating a sandpapering machine; that defendant, through its foreman, informed the father that the company then had an operator running the sandpapering machine, but there was liable to be a change at any day, and in that case a sandpapering operator would be required at once, and that plaintiff could in the meantime obtain employment in the factory, operating a ripsaw, and when the place was vacant, could be employed in running the sandpapering machine; that plaintiff's

father then complained to defendant that the ripsaw had no guards or spreaders, and that its operation would be more or less dangerous without the guard or spreader; that the foreman of defendant stated that the spreader ought to be on the saw, and that, if plaintiff would go to work with the same, defendant would place the spreader upon the same; that the ordinary spreader or guard on ripsaws such as were used in defendant's factory is made of a thin piece of steel or iron placed at the rear of the saw, and for the purpose, in such saws, of protecting the saw from splinters, edgings, and pieces of wood striking the same, and thus protecting the operator of the saw from injury from the same; that, without the spreader, slivers, edgings, and pieces of boards from the boards being ripped would catch on the teeth of the fast-revolving saw, and be thrown in front of the same, and could thus injure the operator; that the spreader or guard would protect the operator of the saw from any and all such dangers,—from being struck by slivers and pieces of boards so caught upon the teeth of the saw; that the foreman who engaged plaintiff had full knowledge of this machinery, and it was his duty to inspect the same, make any needed repairs and changes, provide guards, and arrange the same so as to be reasonably safe; that defendant then promised that it would place a guard upon the saw, and that, upon such promise of the defendant, plaintiff, by the direction of his father, entered the employment of the defendant about the 23d of April, 1899; that the danger in operating the saw was at the time not so imminent and immediate but that it was reasonably safe to operate the same for a short period of time until the guard could be put on the saw; that when plaintiff entered upon the employment the foreman of defendant told plaintiff he would place a guard upon the saw as soon as it was possible for him to do so, and within a reasonable time;

that plaintiff believed defendant would place a guard thereon and, knowing that ripsaws had been operated by ordinarily prudent and careful men without guards, and depending upon the promise of the foreman that the guard would be placed thereon within a reasonable time, and with the expectation and promise of being placed regularly on the sandpapering machine in a short time, went to work at the saw, and continued thereon for a period of two weeks, when complaint was made by the father of plaintiff and plaintiff himself that the spreader or guard had not been placed on the saw; that defendant's foreman stated to plaintiff that the machinery would be immediately stopped for regular repairs, and that during said period they would place a guard upon the same; that defendant stopped its manufactory for repairs for about nine days, including the 17th of May, 1899; that on the 18th of May, 1899, plaintiff, returning to work at the request of defendant, was working during such day upon shaper and boring machines until about fifteen minutes of six o'clock p. m. of said day, when he was ordered by the foreman of defendant to go to the ripsaw and rip some short, thick pieces of boards; that plaintiff gave to the foreman the saws to repair, and stated that the guard was not on the same, and asked why not, and the foreman stated he had not time to do so, but would put it on, and the foreman said the lumber was needed immediately in the operation of the plant, and to go on with the saw; that in order to rip such thick pieces it was necessary to place the table of the saw in a horizontal position, and in that position there was more danger of the saw catching slivers, edgings, and pieces of boards, without a guard or spreader, which danger was unknown to plaintiff; that plaintiff then proceeded to the saw, and when he had ripped some six or seven of the short pieces a

sliver or edging of about an inch square caught the teeth of the saw, and was hurled forward of the saw, striking plaintiff in the right eye, and inflicting the injuries for which damages are claimed.    It is further alleged that the injury occurred through the negligence of the defendant in not placing the guard before the saw, and thus protecting the operator against the splinters, sticks, and boards coming against it.    The answer of defendant denied the material allegations of the complaint, and set up as affirmative defenses contributory negligence on the part of the plaintiff, and that plaintiff assumed the risk of the occupation.    After the evidence in behalf of the plaintiff was concluded, and upon motion of the defendant, a nonsuit was granted by the court.    Plaintiff appeals.

1.    The errors assigned are upon rulings of the court excluding testimony tendered by the plaintiff, and the granting of the nonsuit.    The errors assigned upon the exclusion of evidence are (1) that the court erred in excluding evidence tending to show that all the ripsaws in defendant's factory were of the same model as offered at the trial; (2) in excluding evidence tending to show that all saws plaintiff had worked with, except defendant's were guarded; (3) in excluding evidence tending to show the customs of mills on Puget Sound in and around Seattle, relative to guarding ripsaws.    The controlling question is the granting of the order for a nonsuit.    It may be observed that the evidence, when considered upon the objection to its sufficiency, must be given the most favorable intendment in favor of the contention of the plaintiff.    Applying this construction, an examination of the evidence shows that the allegations of the complaint were fairly sustained, and, in view of the argument of respondent, there is, in substance, little distinction between ruling upon

a general demurrer to the complaint and the objection which was made to the sufficiency of the evidence. But it is deemed proper, for a full consideration of the case, to examine the evidence tending to show the ultimate facts. The plaintiff's father and guardian stated he had been working in a furniture factory for four years; had worked on different machines,—among others, ripsaw and dovetailing machines; that he had worked about eight years with such machines. In defendant's factory he was running a tenon machine. He had entered the employment of defendant in March, 1899. He was employed upon another floor from the plaintiff, his son. There were three ripsaws on the floor where plaintiff worked. The father said he had examined the mills and factories in and around the city of Tacoma. In answer to the question: "What do you find as to ripsaws guarded or not guarded?" he said:

"I find that they are nearly all guarded. Out of eighteen saws that I have examined there are only four that are not guarded. Q. You may state if use has anything to do and the length of the lumber has anything to do with the necessity of the guard? A. It has something to do with it. In ripping long stuff, all the way from ten to twenty feet long, a guard is not as requisite as it is for short material. However, a guard is no detriment at any time and I consider it absolutely necessary in ripping short stuff, from four feet down to any length that may be ripped."

The witness also testified to the effect that he would not have consented to the employment of his son to continue work upon the saw, except for the promise of the defendant to place a guard thereon; that, at the time the repairs were made in the manufactory, he saw the foreman grinding the plates for the guards, which the foreman informed him would be put upon the saws. He also testified that the injury to the son would have been prevented if the guard had been on the saw. There was other testimony of an

experienced workman as to the nature of the guard and that it was much safer for the operator to conduct the saw with a guard than without; that the danger of slivers, splinters, and fragments of the boards flying into the face of the operator was well known and recognized by sawyers, as also was the increased safety in the guard. It also appeared in the testimony that a similar accident, though not similar injury, had occurred from this same saw some time before the engagement of plaintiff. It is urged by counsel for respondent, in support of the judgment, that the absence of the guard or spreader to the ripsaw cannot be imputed to the defendant as primary negligence, and the rule is invoked that when the master who operates dangerous machinery uses the machine in ordinary general use, and the machine is in good order (that is, has no defects in itself), no negligence can be inferred; that if the evidence shows such machine, and in such condition, it is the duty of the court to determine there is not negligence, and no question remains for the jury. It may be said that some authorities seem to support this rule, without qualification.

It is urged that it would be very unsafe to permit a jury to fix an arbitrary standard of duty in any given case, and therefore, if the ordinary machinery, in good order, is used, negligence is not imputed to the master. An examination of the authorities will show that definitions of "ordinary care" and "reasonable safety" are expressed in varying language, but generally it seems they mean such care as the ordinarily prudent man in the particular occupation, with ordinary experience and intelligence, would use to protect himself. The supreme court of the United States, in *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 417 (12 Sup. Ct. 679), has fairly stated the function of the

court and the jury at the trial, where the ultimate inquiry is the fact of negligence. It was there observed:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall constitute ordinary care under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs."

While the jury is not permitted to apply a rule of care formed solely by itself, all the facts and circumstances surrounding the transaction must be considered. The fact that the machine in operation is in ordinary use is a material one, but it is not an absolute rule that this showing alone in all cases relieves the master from the charge of negligence. While the master is not required to procure the newest and best machine, or to enter the field of experiment to provide additional safeguards to lessen the danger of machinery in ordinary use, he must give heed to the deductions of experience. It is a fact commonly known that machinery once considered safe has frequently been demonstrated by experience to be less safe than improved machinery in common use, and the master cannot shut his eyes to such experience. If there can be placed upon a machine a simple, inexpensive guard, in common use, which will obviously reduce the danger of its operation, such fact surely may be taken into consideration, in con-

nection with the other facts, to determine whether the master in the particular instance has acted as an ordinarily prudent person would have done.

This view of the charge of primary negligence, under the evidence in the present case, refers the weight and the finding of the facts to the jury. So it is unnecessary to consider further the distinction, urged by counsel for respondent, between the commonly accepted rule that, when the master promises to repair a defect in a machine approved by common use, he is, for a reasonable time, charged with the assumption of the risk of the servant,— that then the assumption of the risk by the servant is shifted to the master,—and the case of such a machine in good order, which the master promises to improve and make more safe.

2.   The judge who tried the case seems to have concluded that the promise to repair made by the defendant was not performed within a reasonable time, and that, as a matter of law, after such time had elapsed, the assumption of the risk was shifted again to the plaintiff. The general rule applicable here is stated, in terms worthy of approval, by Shearman & Redfield on The Law of Negligence, § 215, thus:

"There is no longer any doubt that where a master has expressly promised to repair a defect, the servant does not assume the risk of an injury caused thereby within such a period of time after the promise as would be reasonably allowed for its performance, or indeed, within any period which would not preclude all reasonable expectation that the promise might be kept. And the same principle applies to a case where the master promises to a servant to discharge an incompetent fellow-servant, but fails to do so, and the former servant is thereby injured, or where a servant, apprehending a particular danger, makes it known to the master, who assures him that he will

provide against it. Nor, indeed, is any express promise or assurance from the master necessary. It is sufficient, if the servant may reasonably infer that the matter will be attended to."

This rule is quoted and adopted by the supreme court of the United States in *Hough v. Texas & P. Ry. Co.,* 100 U. S. 213. Bailey on Master's Liability, ch. 2, p. 211, observes:

"The language of some of the cases would seem to warrant the conclusion that a promise to repair, on the part of the master, was in effect a guarantee on his part to indemnify the servant against injury while he continued in the employment exposed to the known peril. Yet such is hardly the effect of the rule. I think—and such is the result of the great majority of the cases—that ordinarily it is a question for the jury, though sometimes for the court."

Cooley on Torts (2d ed.), p. 661, states the principle thus:

"It is also negligence for which the master may be held responsible, if knowing of any peril which is known to the servant also, he fails to remove it in accordance with assurances made by him to the servant that he will do so. This case may also be planted on contract, but it is by no means essential to do so. If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that parties may and should, where practicable, come to an understanding between themselves regarding matters of this nature."

The real question is whether the plaintiff reasonably relied on the promise to put the guard on the ripsaw, at the time he was injured. This, from the evidence, was a question of fact for the jury. There is nothing in the evidence which seems to sustain the charge of contributory negligence on the part of the plaintiff, as a conclusion of law.

It may be observed of the other assignments of error that, upon the consideration of the case here made, they become immaterial. Reversed, and remanded for a new trial.

HADLEY, FULLERTON, ANDERS, DUNBAR, MOUNT and WHITE, JJ., concur.