[No. 10808.   Department Two.   February 18, 1913.]

PAUL ELANIUS, *Respondent*, v. HENRY ROTHSCHILD *et al.*,
*Appellants.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—NOTICE OF DANGER.
A longshoreman did not, as a matter of law, assume the risks in
working near an improvised conveyor chute loading flour, which he
had assisted in substituting for a regular chute because of a lumber
pile requiring a change, where there was nothing to indicate the
faulty construction of the substituted chute, or to give notice that
because of failure to fasten it at the lower end, it would gradually
work back and cause the accident, the foreman who directed the
work not apprehending any danger.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered April 10, 1912, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained by a longshoreman engaged in
loading a vessel.   Affirmed.

*Trumbull & Trumbull*, for appellants.

*Johnston & McMenamin*, for respondent.

MORRIS, J.—Respondent was injured while acting as one
of a gang of longshoremen, engaged in loading a steamship
with flour.   He recovered judgment, and upon this appeal we
are asked to hold that the judgment should be reversed be-
cause respondent should be held in law to have assumed the
risk of his injury.   The material facts are these:   Upon the
deck of the steamer, and opposite the hatchway through
which the flour passed to the lower decks, was a consignment
of lumber so placed that it prevented the use of the conveyor
chute ordinarily used, on account of the distance between the
end of the conveyor and the lumber pile being too short.
These conveyor chutes are provided with wide ends, extend-
ing beyond the framework of the conveyor, and gradually
narrowing to the width of the chute, the purpose of these

[1]Reported in 129 Pac. 1091.

wide ends being to avoid the danger of contact with the endless belt and cleats running on the conveyor.

Finding that, because of the situation of the lumber, the ordinary conveyor chute could not be used, respondent was directed by the foreman to substitute a conveyor chute not provided with widened ends, and to saw off one end of it so as to fit the required distance between the conveyor and the hatchway. One end of this substituted chute was then lashed to the conveyor with ropes, so that it hung a few inches below the conveyor, and the other end brought to the chute leading to the lower deck, without fastening the two chutes together or connecting them in any way so as to prevent the substituted chute from moving when in use. Respondent stationed himself on one side of this substituted chute to assist the flour sacks in passing through it to the hatchway. It was quite dark, so that respondent could not observe any gradual movement of the substituted chute in slowly working back until in about forty-five minutes after its use the end lashed to the conveyor came in contact with the cleats on the conveyor belt, which would have been impossible had it been provided with the wide ends of the regular chute ordinarily used. When the chute came in contact with the cleats, it upset, striking respondent in the face and causing the injury complained of. It is contended that the danger was an obvious one; that respondent was sufficiently experienced to understand it, and that because he assisted in preparing the substituted chute for use, he cannot recover.

We cannot comprehend how we can say that, under all these circumstances, the questions here submitted were not of fact for the jury rather than of law for the court. The danger was not so open and apparent that respondent must be said in law to have assumed it. There was nothing to indicate the faulty construction of this substituted chute, or to apprise respondent that, because of the failure to fasten it at the lower end, it would gradually work back towards

the conveyor and eventually come in contact therewith.   It
may be that this movement was due to the operation of a
natural law, as contended by appellants, but it does not
appear to us, if this be accepted as true, that it was so
plain and obvious as to be within the knowledge of the
ordinary longshoreman.   If it was, then why was it not
within the knowledge of the foreman, and means taken to
overcome it?   The foreman did not appreciate any such
danger, for he says he did not "think it was possible to push
the chute the other way because the sacks go this way (in-
dicating) ; the elevation was enough to shove the chute down."
Upon the whole case we can find nothing indicating to us
that it is our duty to overturn the verdict, by holding the
danger was so open and apparent that the rule of assumption
of risk must apply.   There is no necessity of entering upon
any discussion of this rule or the circumstances under which
the application is made by the courts.   The facts in the
case do not require it.

The judgment is affirmed.

CROW, C. J., ELLIS, MAIN, and FULLERTON, JJ., concur.