[No. 10769.   Department Two.   June 19, 1913.]

ENGEBUT LAMOON, *Respondent*, v. SMITH CEMENT BRICK COMPANY, *Appellant*.[1]

APPEAL—REVIEW—PLEADINGS—AMENDMENTS TO CONFORM TO PROOF —MASTER AND SERVANT—VARIANCE.  A variance between the complaint and proof as to the particular point where a runway for wheeling concrete in wheelbarrows was too narrow, will on appeal be deemed immaterial, or the complaint amended, where the evidence was admitted without objection on the ground of variance or claim of surprise.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—PROXIMATE CAUSE—QUESTION FOR JURY.  Whether the narrowness of a runway for wheeling concrete in wheelbarrows, was the proximate cause of injury to a servant who fell from the runway when his wheelbarrow struck a post, is a question for the jury, where the post protruded at a right angle turn, and witnesses testified that the runway was dangerous and too narrow to make the turn around the post with safety.

SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY. In such a case, whether the plaintiff was guilty of contributory negligence in failing to proceed a foot or eighteen inches further before attempting to make the turn, or negligently lost control of his wheelbarrow before he reached the turn, were questions for the jury, where

[1]Reported in 132 Pac. 880.

the evidence was conflicting; especially since slight negligence in failing to gauge his distance to a nicety would not preclude a recovery.

SAME—ASSUMPTION OF RISKS—OBEDIENCE TO ORDERS—PROMISE TO REPAIR—QUESTION FOR JURY. A servant proceeding along a narrow runway with a loaded wheelbarrow of concrete, in obedience to a direct order, does not assume the risk, where he protested against the use of the narrow runway and the foreman promised to fix it.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 11, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in the construction of a building. Affirmed.

*Huffer, Hayden & Hamilton,* for appellant.

*Govnor Teats, Hugo Metzler, Leo Teats,* and *Ralph Teats,* for respondent.

ELLIS, J.—This is an action to recover damages for personal injuries sustained by the plaintiff while employed by the defendant in the construction of a certain concrete wall of an addition to the Sheridan school, in the city of Tacoma. Plaintiff, when he was injured, on August 12, 1911, had been working for the defendant for a period of three weeks, but only three days of this time was spent in work at the Sheridan school. Prior to that time he was engaged in wheeling concrete for the construction of sidewalks. The concrete wall was ten inches thick, and at the time in question the form for its further construction had reached a height of about twelve feet, the concrete being conveyed from a mixer on the ground up a runway in wheelbarrows. This runway consisted of three 2x12 planks, placed side by side, forming an incline from the ground to a height of about eleven feet, where the runway became horizontal, its width remaining the same. It extended beyond and at right angles to the wall form into which the concrete was being poured, to a similar wall a number of feet distant from and parallel to the first.

To the right of the runway and at the point where it became horizontal, a 2x6 post protruded about 1½ feet above the surface of the runway. Between 12 and 20 inches further along the runway, a similar 2x6 post was encountered. Braces had been nailed to these two posts in the construction of the forms for holding the concrete. One witness testified that a number of 2x4 timbers protruded above the surface of the runway at this point, rendering it difficult to pass with a wheelbarrow. In order to reach the point where the concrete was being poured, it was necessary to pass around these two 2x6 posts, turn to the right, and follow a runway made of two 2x12 planks, running parallel with the wall. Plaintiff, when first ordered to work on this particular runway, told one Ellison, defendant's foreman, that the runway was not wide enough to turn with the wheelbarrow, and Ellison ordered him to go ahead and "wheel concrete," that he would "fix the scaffold." Shortly after this protest and promise, the plaintiff started up the runway with a wheelbarrow loaded with concrete, being assisted up the incline by one Thompson, who placed his shovel on the nut at the end of the axle on the right-hand side of the wheelbarrow, and walked backward up the incline. The wheelbarrow, which is in evidence, has an iron body 3x2 feet, and is 28 inches in height at the front and 24 inches at the rear end, the entire length being 5 feet 8½ inches. About two feet below the first 2x6 post, Thompson removed his shovel from the wheelbarrow, and the plaintiff proceeded unassisted until he reached the level surface, when the wheel or, as some of the witnesses testified, the side of the wheelbarrow struck the first 2x6 post. The wheelbarrow tipped to the left, its right handle striking plaintiff, causing him to fall to the ground and sustain the injuries for which he sues. The trial resulted in a verdict and judgment for the plaintiff. At appropriate times defendant interposed motions for nonsuit, for a directed verdict, and for a new trial, all of which were denied. The defendant has appealed.

Appellant's first contention, if we correctly understand it,

is that there was a variance between the complaint and the evidence, in that the complaint alleged that the respondent objected to the narrowness of the runway at the point where the wheelbarrows were to be emptied and that the foreman promised to widen the runway at that point, whereas the evidence showed that both the objection and the promise related to the place where the turn had to be made. We find no merit in this contention. While the testimony of the respondent and two or three other witnesses was clear and convincing that the protest and promise were made and related to the last mentioned place, this evidence was not objected to on the ground of variance at the time of its admission, nor was any prejudicial surprise claimed. In such a case, it is elementary that the pleading will be deemed amended to conform to the proof. In any event, the variance hardly arises to the dignity of a substantial departure warranting a reversal. *Hansen v. Rounds*, 70 Wash. 350, 126 Pac. 927.

It is next claimed that no causal connection was shown between the defect and the injury; the argument being that the collision of the wheelbarrow with the post was caused "by the joint action of the pushing and pulling forces exerted by the respondent and Thompson," and that the proximate cause of the injury "was the manner in which the wheelbarrow was handled." These forces, of course, had to be exerted whatever the width of the runway. The evidence tended to show that the wheelbarrow was run up the incline rapidly in order to make the grade, and that shortly after Thompson released his hold on the wheelbarrow, it veered to the right and struck the post. The respondent testified to the effect that he was just starting to make the turn, and that in so doing he struck the post because the place was too narrow to avoid it. Another witness testified that he would have to go pretty close to the post "to get around there." A third witness testified that he saw the respondent attempting to make the turn at the time of the accident, and that the space was too narrow and was dangerous even when care was

exercised. Still another witness testified that one could not get past the posts running the wheelbarrow on the middle plank. It is obvious that to turn a loaded, heavy iron wheelbarrow of the dimensions of the one in evidence around these two posts on a platform only three feet wide, so as to pass onto a still narrower platform at a right angle to the first, would be attended with much greater danger, either of running off the platform on the one hand, or of striking one of the posts on the other, than would have attended a turn upon a wider platform. That the appellant was negligent in furnishing a platform too narrow for reasonable safety can, under the evidence, hardly be questioned. The whole situation was repeatedly detailed to the jury with the aid of an illustrating model. Whether the narrowness of the platform was the direct and proximate cause of the injury was properly submitted to the jury. As said in *Goe v. Northern Pac. R. Co.*, 30 Wash. 654, 71 Pac. 182:

"On the whole we are inclined to think, under the rules we have so often announced and under the rule announced by the supreme court of the United States in *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, viz., that what is the proximate cause of an injury is ordinarily a question for the jury; that it is not a question of science or of legal knowledge, but is to be determined as a fact, in view of the circumstances of fact attending it,—that there was sufficient testimony on the question of negligence to be submitted to the jury."

Whether the respondent was guilty of contributory negligence was also a question for the jury. The contention that, if he was in fact attempting to turn, he made the attempt too soon and thus struck the first post, even if conceded, can hardly be held contributory negligence as a matter of law. The distance from the post struck and the platform onto which he had to pass at a right angle was less than two feet. Obviously, the turn had to be made in that distance. It would be drawing the line much more narrowly than any authority would warrant to say that, as a matter of law, he was negligent in failing to proceed a foot or eighteen inches further

before attempting to turn. This is especially apparent, since one witness testified that there were several other obstructing posts in the platform just beyond these two. The contention that the evidence shows that the respondent was not attempting to turn, and that the collision with the post was caused by his own negligence combined with that of his fellow servant, Thompson, in that Thompson released his hold too soon and the respondent then negligently lost control of the wheelbarrow, also presents a question of fact on conflicting evidence. The respondent testified that he was in fact attempting to turn, and Thompson testified that he released his shovel from the wheelbarrow only when necessary, and at the usual place just before the level was reached. The removal of the shovel was necessary in order to permit the wheelbarrow to turn. The credibility of all of this testimony was for the jury. Whether, in view of the added weight suddenly thrown upon the respondent by the necessary removal of Thompson's shovel, and the obvious necessity of avoiding a fall from the outer side of this narrow runway, the respondent was guilty of contributory negligence in running too near the post was a question for the jury. In such a situation, slight negligence in failing to gauge his distance from the post to a nicety, even if conceded, should not preclude a recovery.

"The law is, that if the plaintiff was guilty of any want of ordinary care and prudence (however slight), which neglect contributed directly to produce the injury, he cannot recover. And so were the jury instructed, in substance and effect. It is not the law that slight negligence on the part of the plaintiff will defeat the action. Slight negligence is the want of *extraordinary* care and prudence; and the law does not require of a person injured by the carelessness of others, the exercise of that high degree of caution as a condition precedent to his right to recover damages for the injuries thus sustained." *Cremer v. Town of Portland*, 36 Wis. 92.

See, also, *Gage v. Springston Lum. Co.*, 47 Wash. 141, 91 Pac. 558; *Atherton v. Tacoma R. & Power Co.*, 30 Wash.

395, 71 Pac. 39; *Missouri Pac. R. Co. v. Mackey*, 33 Kan. 298, 6 Pac. 291. The jury still might have found that the narrowness of the scaffold was the proximate or efficient cause of the injury.

Did the respondent assume the risk? That the dangers attendant upon the narrowness of the platform were open and obvious is admitted. The respondent and another man observed them and protested against their continuance. The respondent and two other witnesses testified positively that he proceeded with the work only after a direct order from the foreman supplemented by a promise to remedy the defect. We will not review the evidence further than to say that we deem the protest, order and promise overwhelmingly established, and that the promise related to the place where the turn had to be made, not the place where the wheelbarrows were to be emptied, as claimed by the appellant. Where the servant proceeds in obedience to an order, even without a promise to repair, he does not, as a general rule, assume the risk of unnecessary dangers injected into the work by the master's negligence.

"The servant assumes the risk of obedience, or is guilty of contributory negligence in obeying the order, only when the added danger so incurred is open, patent and obvious alike to man and master, and so plain that reasonable men might not differ as to its existence, and so imminent that a reasonably prudent man would not obey the order. 'In other words, if a danger is not so absolute or imminent that injury must almost necessarily result from obedience to the order, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order.' 1 Labatt, Master and Servant, p. 1241, § 439." *Rogers v. Valk*, 72 Wash. 579, 131 Pac. 231.

See, also, *Withiam v. Tenino Stone Quarries*, 48 Wash. 127, 92 Pac. 900; *Campbell v. Winslow Lum. Co.*, 66 Wash. 507, 119 Pac. 832; *Offutt v. World's Columbian Exposition*, 175 Ill. 472, 51 N. E. 651; *Gundlach v. Schott*, 192 Ill. 509, 61

N. E. 332, 85 Am. St. 348.  The question thus becomes one
of fact for the jury whenever the minds of reasonable men
may differ upon it.  *Jobe v. Spokane Gas & Fuel Co.*,
73 Wash. 1, 131 Pac. 235; *Pearson v. Federal Min. etc. Co.*,
42 Wash. 90, 84 Pac. 632; *Etheridge v. Gordon Const. Co.*,
62 Wash. 256, 113 Pac. 639; *Chicago Hair & Bristle Co. v.
Mueller*, 203 Ill. 558, 68 N. E. 51; *Chicago & A. R. Co. v.
House*, 172 Ill. 601, 50 N. E. 151; *Louisville & N. R. Co. v.
Kelly*, 63 Fed. 407; *Malott v. Hood*, 201 Ill. 202, 66 N. E.
247.

In the case in hand, the respondent's position is further
strengthened by the promise to repair. · There was· some evi-
dence from which the jury might have found that he pro-
ceeded with the work in reliance upon this promise.  The
promise was unconditional, and related solely to the safety of
the servant.  We are committed to the rule that in such a case
"the risk of the defect is cast upon the master until such time
as would preclude all· reasonable expectation that the promise
might be kept, unless the danger from the defect is so immi-
nent that no person of ordinary prudence would risk injury
from it."  *Morgan v. Rainier Beach Lum. Co.*, 51 Wash. 335,
98 Pac. 1120, 22 L. R. A. (N. S.) 472; *Crooker v. Pacific
Lounge & Mattress Co.*, 29 Wash. 30, 69 Pac. 359; *Shea v.
Seattle Lum. Co.*, 47 Wash. 70, 91 Pac. 623; *Hough v. Rail-
way Co.*, 100 U. S. 213; 26 Cyc. 1209, and cases there col-
lected.  Clearly the question of assumption of risk was one
for the jury.

A review of the many authorities cited by the appellant
from this and other jurisdictions would serve no purpose.
They merely illustrate the fact so often noted that each case of
this character is largely determinable from its own facts and
circumstances.

Many assignments of errors claimed are based· upon the
giving of certain instructions and the ·refusal of certain oth-
ers.  Most of these are sufficiently disposed of by what we have
already said.  To review them all in detail would extend this

opinion to an interminable length. We have examined with care both the instructions given and those refused. The instructions given were full and complete and correctly stated the law applicable to the facts.

We find no error which would justify a reversal.

The judgment is affirmed.

MAIN, MORRIS, and FULLERTON, JJ., concur.