[No. 18091.  Department One.  November 7, 1923.]

LEE STOOPS et al., Respondents, v. CARLISLE-PENNELL LUMBER COMPANY, Appellant.[1]

LANDLORD AND TENANT (77, 81)—INJURIES FROM DEFECTIVE CON-DITION OF PREMISES—ASSUMPTION OF RISK—PATENT OR LATENT DE-FECTS—EVIDENCE—SUFFICIENCY. A landlord's promise to repair de-fective steps relieves the tenant of the assumption of risks only for a reasonable time; and the landlord is not liable where the in-creasingly dangerous condition of common wooden steps was open and apparent, its cause could have been easily ascertained and rem-edied by the tenant, who was a carpenter and who did nothing about it for six months.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered April 2, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a tenant in a fall upon defective steps.  Reversed.

[1]Reported in 219 Pac. 876.

*Dysart & Ellsbury* and *Theodore B. Bruener,* for appellant.

*O. J. Albers* and *Forney & Ponder,* for respondents.

MACKINTOSH, J.—The essential facts will be thus summarized:

The appellant operates a lumber mill and owns, in connection therewith, the homes in which its employees reside, one of which it rented in 1920 to the respondents. Mr. Stoops was employed as a carpenter, and in June, 1921, complained to the appellant's carpenter foreman that the front steps of his residence were defective and should be repaired. The foreman at that time promised the repairs would be made, but the promise was not fulfilled. Afterwards, and before the 4th of July, 1921, the complaint was renewed, as was the promise. Thereafter the respondents continued to occupy the premises and made no further complaint or mention of the defective condition, although nothing was done by the appellant to remedy it. In the following December, Mrs. Stoops, going on the front steps late at night, lost her balance by reason of the defective condition, and suffered personal injuries for which the action was brought.

From June until December, according to Mrs. Stoop's testimony:

"They [the steps] were getting steadily worse . . . from use. You would notice them when you would go down if you stepped on the left hand side they would throw you to the left, you know, kind of wobbly."

Asked if they were getting worse, she said:

"Yes, they seemed to give more. Q. And seemed to continue to give more and get more wobbly with the usage and the wear that the steps got? A. Yes, sir."

The steps led from the front walk to the front porch, were constructed of wood in a simple design and consisted of three treads. The sides of the steps were unenclosed, making possible a view of their supports. The defect consisted in the absence of a block at the bottom of the steps on one side, which caused the skirting board to crack and the steps to sag. Upon these facts, a judgment has been rendered in favor of the respondents, and the appellant presents several claimed errors, only one of which needs be discussed, as its determination will dispose of the controversy. That error is the refusal of a motion for a directed verdict or judgment notwithstanding the verdict, based upon the theory that the respondents had assumed the risk and could not be allowed to receive a judgment.

It is unnecessary to enter into a discussion of the question whether a landlord, under any circumstances, is liable to his tenant for personal injuries resulting from either patent or latent defects and arising out of a contract of tenancy. This is a question upon which there are divergent authorities; and, assuming that there can be such liability, we will discuss the question whether, under the circumstances of this case, the appellant has been relieved therefrom by the respondents' own acts and conduct.

Whether there can be an assumption of risk by the tenant is a question which has not often arisen in the courts, for the doctrine of a landlord's liability is rather modern, and of course the question of the assumption of risk could not arise in those jurisdictions which have adhered to the old rule that the landlord is in no event liable. Counsel for respondents acquiesce in the view that, assuming the landlord may be held liable, the doctrine of assumption of risk is applicable as between him and his tenant, and both parties have argued this question as being governed by those cases

which lay down the rule regarding the assumption of risk as it relates to the relationship of master and servant. The promise to repair, after the appellant had had its attention called to the defective condition, would relieve the tenants from the burden of assuming the risk during such time as would reasonably appear proper for the repairs to be made and the promise of the landlord to be fulfilled. During such time the risk is assumed by the landlord. *Crooker v. Pacific Lounge & Mattress Co.,* 29 Wash. 30, 69 Pac. 359; *Shea v. Seattle Lumber Co.,* 47 Wash. 70, 91 Pac. 623; *Morgan v. Rainier Beach Lumber Co.,* 51 Wash. 335, 98 Pac. 1120, 22 L. R. A. (N. S.) 472; *Lamoon v. Smith Cement Brick Co.,* 74 Wash. 164, 132 Pac. 880; *Johnson v. North Coast Stevedoring Co.,* 109 Wash. 236, 186 Pac. 663.

It is hardly open to dispute that, in the present case, such reasonable time had long expired before the injury. The continued use, for more than five months, of the defective steps, with knowledge that they were in a state of disrepair and that they were increasingly so and that no effort had been made by the appellant to comply with its promise to repair, cast the risk upon those who remained upon the premises after the expiration of such reasonable time, especially in view of the fact that the defect was of such a simple nature that the repairing of it would consume very little time and material, and was one which the landlord could have taken care of conveniently within a very short time after it had been called to his attention. *Lowe v. O'Brien,* 77 Wash. 677, 138 Pac. 295.

The question then arises whether the defect was one such as the tenant would be held to assume the risk of. Applying again the rule as laid down between master and servant, it is argued that the tenant only assumes the risk of those defects which are open, apparent, or

discernible to ordinary observation; in other words, not latent. *French v. First Ave. R. Co.,* 24 Wash. 83, 63 Pac. 1108; *Young v. O'Brien,* 36 Wash. 570, 79 Pac. 211; *Ward v. National Lum. Co.,* 54 Wash. 304, 103 Pac. 1; *Blair v. Spokane,* 66 Wash. 399, 119 Pac. 839; *Elanius v. Rothschild,* 72 Wash. 152, 129 Pac. 1091; *Collins v. Terminal Transfer Co.,* 91 Wash. 463, 157 Pac. 1092, and 18 R. C. L. 687.

The inquiry then is as to whether the defect was patent or latent. In such a simple structure as these common wooden steps, the supports of which were not even enclosed and showing upon their surface a sagging, it can scarcely be thought that the defect was not open and apparent, especially to a person such as Mr. Stoops, who was a carpenter by trade and was therefore possessed of technical skill in the determination of this very matter. It would seem that, to a person so circumstanced, an actual sight of the surface of the steps would disclose the cause of their defect. The testimony is (and it is a matter of common knowledge) that a defect such as existed here could be remedied, temporarily at least, and the situation rendered secure by the expenditure of a minimum amount of labor, and a tenant can hardly be excused from devoting that much time to his own welfare.

An attempt is made by the respondents to excuse their failure to take these simple precautions by reason of certain rules promulgated by the appellant regulating changes, alterations and additions to the premises, which the tenants were not allowed to make without the approval of the appellant. But these rules manifestly had no relation to a situation such as existed here, and the respondents' excuse in this regard is without justification.

But even if it could be considered, as a fact submissible to the jury as to whether the defect was open

and apparent, it certainly cannot be said it was of such a nature that, by the exercise of reasonable care, the condition could not have been ascertained. *Anderson v. Inland Telephone & Telegraph Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Collins v. Terminal Transfer Co., supra; Landry v. Seattle, Port Angeles & Western R. Co.*, 100 Wash. 453, 171 Pac. 231; *Belkin v. Skinner & Eddy Corp.*, 119 Wash. 80, 204 Pac. 1046. The cause of the situation, even if not open and apparent, was ascertainable by a most casual investigation, and if the respondents made no such investigation, yet they are charged with the duty to make it and have assumed the risk of what they would have discovered had it been made.

We are satisfied, therefore, as a matter of law, that the appellants were, by the use of the steps for so long a time subsequently to their complaint in regard thereto and the promise to repair, in a position where they must be held to have assumed the risk of such defects as were open or apparent or ascertainable by the exercise of reasonable care, and that the defects were open and apparent; or, in any event, ascertainable had the respondents shown a modicum of precautionary interest.

Under these circumstances, the appellant was entitled to a judgment in its favor, and the one given against it is therefore reversed.

MAIN, C. J., PARKER, and TOLMAN, JJ., concur.