[No. 18499. *En Banc.* December 10, 1924.]

ANNA B. JOHNSON, *Respondent,* v. HARRY W. DYE *et al.,* *Appellants.*[1]

LANDLORD AND TENANT (77, 86)—DEFECTIVE PREMISES—DUTY AND LIABILITY TO TENANT — LATENT DEFECTS — EVIDENCE — QUESTION FOR. JURY. The liability of the landlord for injuries sustained by the tenant through a defective step is a question for the jury, where the injury was due to a rotten support, which was inclosed and not patent or discoverable by the tenant by casual inspection, the steps were patently defective in that the top boards were loose, and the landlord had promised to repair them, and had he done so or inspected them, the latent defect in the supports would have been discovered.

SAME (81, 86)—DEFECTIVE PREMISES—CONTRIBUTORY NEGLIGENCE OF TENANT—QUESTION FOR JURY. In such a case, the assumption of risks or contributory negligence of the tenant, and the question as to what was a reasonable time for performance of the promise to repair, is a question for the jury, where she rented the premises in July, when the promise to repair was made, and she used the steps until October 22, under repeated promises to repair, knowing the top boards were loose, but not knowing of the latent defect of the rot-

[1]Reported in 230 Pac. 625.

ten supports, which could not be inspected except by taking up the boards.

SAME (85)—DEFECTIVE PREMISES—TRIAL—INSTRUCTIONS. In an action for personal injuries sustained by a tenant through a latent defect in a step, in which it appears that the landlord had promised to repair the steps, it is proper to instruct that the tenant was warranted in remaining in the house for a reasonable time awaiting the performance of the promise.

DAMAGES (47)—FUTURE PAIN AND SUFFERING—INSTRUCTIONS. Error cannot be assigned upon a mere exception to instructions as to pain and suffering which the plaintiff "may suffer in the future" because the words "reasonably certain" were not used.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for King county, Brinker, J., entered October 13, 1923, upon the verdict of the jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a tenant through a defective step. Affirmed.

*Kerr, McCord & Ivey,* for appellants.
*George A. Custer,* for respondent.

HOLCOMB, J.—In this action for damages for personal injuries, the jury rendered a verdict in favor of the respondent for $2,750, upon which judgment entered.

Respondent rented from appellants a dwelling in Seattle, in July, 1922. On October 12, 1922, she fell from the front steps of the dwelling, while she was sweeping the steps and had progressed to the second step from the bottom. She claimed her fall was caused by a defect in the support of the steps, which gave way at the southerly or left end of the steps, precipitating her into an excavation about four feet deep. She was severely hurt, and apparently some of the injuries are permanent. Her theory for recovery is that the defect in the steps complained of was a latent defect which could not have been discovered by her, and

the risk of which was not assumed by her, but which could have been discovered by the landlord with reasonable diligence, and repaired. She claimed, also, that, when she rented the house, the landlord promised and agreed to repair the steps, which were in disrepair at that time by reason of the tops of the steps or treads being loose, and that they continued so in disrepair until the time of her injury, although appellant repeatedly promised to repair them at different times during her tenancy, and by reason of his failure so to do, he is liable for the injuries sustained.

There were four steps leading down from the front entrance of the house to the board walk. The top boards or treads in these steps were shown by respondent to have been loose when she began occupancy of the house, showing that the nails were loose in the foundation supports of the steps. The supports or under pieces of the steps could not be seen from the top or outside. They were enclosed by planking on both ends of the structure. The support or bench had rotted away prior to the accident. There was nothing visible from the outside to indicate that the steps did not have the regulation bench to support them at the south end. The pieces had rotted away and loosened at the south end, so that, as later experience showed, when a person happened to stand at the south end near the lower corner, the foundation at that corner would give away, and did. In the event of giving away on the south end of the step, the north end would rise into the air, or tip and fall over onto the board walk. There was no way of examining the structure of the steps for this defect except by taking up the boards and looking in. There was no way of reaching them from the outside. The jury viewed the structure, both from the outside and from the excavation under it.

As respondent described the accident, she was sweeping the steps from the top down. She had just reached the second step from the bottom, when the foundation at that corner gave way, tipping her over and causing her to fall into the excavation, striking her right leg against something, and striking and bruising her right chest. The ends of the second and third steps followed her into the excavation, and the lower step turned over on the board walk. Other persons also had similar experiences with the steps, including the postman on that route, very shortly after the accident to respondent, and before the steps had been repaired by appellant, until such persons learned to step upon the middle support of the steps.

On this appeal some of the errors claimed by appellants are not argued in their briefs, and some are not properly assigned.

The questions of law to be determined, however, are these: (1) Whether the defect in the steps was latent or patent; (2) whether respondent could have discovered the defect by making a reasonable inspection of the premises, and whether she made such inspection; (3) Whether the accident was physically possible; (4) whether respondent assumed the risk of such defect as there was; and (5) whether respondent was guilty of contributory negligence.

The theory of respondent in prosecuting this action is that, where a landlord lets premises to a tenant, and agrees to keep the same in reasonable repair, there arises an antecedent duty on his part to make a reasonable inspection for obscure or latent defects, or others affecting the safety of the premises for ordinary use; that there is a greater duty of inspection upon a landlord than there is on the tenant; and where a landlord can, by ordinary diligence, discover the de-

fect which causes the injury, it is his duty to correct the same; he is held to have knowledge of what a reasonable inspection on his part would have disclosed; that, where there is a breach of this duty on the part of the landlord, if the tenant, using ordinary care, and not knowing of the danger, is injured by reason of the defect, the tenant is entitled to recover from the landlord for such damages as may be sustained.

The above theory of the case is sustained by our decisions in the following cases: *Howard v. Washington Water Power Co.*, 75 Wash. 255, 134 Pac. 927, 52 L. R. A. (N. S.) 578; *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917; *Johnson v. Nichols*, 83 Wash. 394, 145 Pac. 417; *Hogan v. Metropolitan Building Co.*, 120 Wash. 82, 206 Pac. 959.

That the action was a physical possibility seems apparent, after examining the evidence for respondent, and that she was guilty of no lack of care, and the verdict of the jury resolved those questions in her favor.

It remains, then, to determine whether the defect which caused the injury was latent or patent; whether respondent could have discovered the defect by a reasonable inspection, and whether she made such an inspection. If she could have discovered the defect by a reasonable inspection, then it may be held that she assumed the risk, after a reasonable time for the landlord to remedy it, or, which amounts to the same thing, was guilty of contributory negligence in using the steps after such reasonable time.

We have held that, in case of a patent defect and a promise to repair on the part of the landlord, the tenant may remain for a reasonable time after notice to the landlord of the defect, giving the landlord reasonable time to remedy it, during which reasonable time

the landlord is liable for any injury resulting from the defect, and after the expiration of which reasonable time he is not liable. *Stoops v. Carlisle-Pennell Lumber Co.,* 127 Wash. 82, 219 Pac. 876.

A similar case to this was that of *Lowe v. O'Brien,* 77 Wash. 677, 135 Pac. 295, where the tenant rented premises which were in disrepair. The landlord, from time to time, made such repairs as seemed to be demanded. The house was built on piling over the water, but nothing was said about the tideflats or the foundation of the house. The tenant asked the landlord when he was going to repair the piling under the building, and stated that, if it was not fixed and made safe, she would move out. The landlord promised to have the work done soon. The tenant was absent for a time, talked to the landlord about repairs upon her return, and shortly thereafter the house fell into the water. The trial judge granted a nonsuit in the action against the landlord. This court reversed that judgment upon the doctrine stated in the *Mesher* case, *supra,* on the ground that the landlord's promise to repair absolved the tenant from the assumption of the risk; and that, if such promises were made, the tenant was warranted in remaining in the house for a reasonable time awaiting performance. It was also held that, whether she remained an unreasonable time and was guilty of contributory negligence, was a question of fact.

Appellant relies largely upon the decision in the *Stoops* case, *supra.* In that case, there had been continued use for more than five months of the defective steps, with knowledge on the part of the tenant that they were in disrepair, and increasingly so, and that no effort had been made by the landlord to comply with its promise to repair. It was shown that the defect was of such a simple nature that the repairing of it would

have consumed very little time or material. The inquiry was as to whether the defect was patent or latent. It was shown that the steps which were made of wood, were not enclosed; that they showed a sagging upon their surface, and that anyone could have seen the defect and known the cause of it. It was stated that the cause of the situation, if not open and apparent, was ascertainable by a most casual investigation, and that, if respondents made no such investigation, they were charged with the duty of making it, and assumed the risk of what they would have discovered had it been made.

The situation is not the same in this case. Here the looseness of the tops of the steps showed that they were in disrepair. This condition was called to the attention of the landlord. He agreed to put the steps in good repair, and did not do so. Had he made any effort to put the steps in good repair, as promised, he would have found the cause of the defect. The steps were loose upon their supports because the supports were rotted away, and therefore would not hold nails. The mere looseness of the tops of the steps was not what caused the injury. That, of course, was patent, but the rottenness and defectiveness of the supports was not patent, and could not have been discovered by respondent by a casual inspection, and was not discovered by her. Consequently the case falls within the rule announced in *Lowe v. O'Brien, supra,* and the other cases cited. There was no error, therefore, in denying appellant's several motions for the dismissal of the case, for judgment n. o. v., or for a new trial.

For the same reasons, there is no merit in appellant's contention that an instruction excepted to, to the effect that, where the landlord agreed to keep the premises in repair for the tenant from month to month, who had been a tenant for some time, and has full

knowledge that the premises are in need of repair, the tenant is warranted in remaining in the house for a reasonable time awaiting the performance on the part of the landlord. This, for the reason, as has been said, that the defects which were open and apparent and called to the attention of the landlord did not constitute the defect which caused the injury, which was not open and apparent, and could not have been discovered by respondent by a casual examination, but could have been discovered by appellant by making a proper examination for the purpose of putting the steps in repair.

Appellant also claims error in giving an instruction, a part of which reads: "and also such pain and suffering as plaintiff may suffer in the future."

Appellant insists that this instruction, which was a part of the instructions of the court on the measure of damages allowable to respondent, is the wrong measure of damages for future suffering; that it permits speculation on the part of the jury. It is urged that the only proper charge upon that element of damages was that damages for "such pain and suffering as was reasonably certain that she would suffer in the future" might be allowed, citing *Gallamore v. Olympia,* 34 Wash. 379, 75 Pac. 978; *Ongaro v. Twohy,* 49 Wash. 93, 94 Pac. 916.

In the *Gallamore* case, *supra,* an instruction using the words "probable pain and suffering" was criticized by the appellant, but the court sustained its use.

In the *Twohy* case, *supra,* the court condemned the use of the words "which he *may* suffer in the future" and held that respondent was entitled to recover only for such pain and suffering as are *reasonably certain* to result from the injury.

We find, however, that the court has departed from that rule in *Kane v. Nakamoto,* 113 Wash. 476, 194 Pac.

381, where we held that error cannot be assigned upon an instruction as to future suffering because the words "reasonably certain" are not used, where the jury are simply told that they can award damages for all of the consequences of the injury, one of which would be future suffering. Also, in *Meehan v. Husselgrave*, 121 Wash. 568, 210 Pac. 2, where the instruction excepted to was identical with that excepted to in this case, the court said:

"The criticism is that the instruction does not limit the recovery for future pain and suffering to such as will be *reasonably certain* to result from the injury. The appellant requested no different instruction on the subject; and while it is not the same, word for word, with the instruction on this subject approved in the case of *Ongaro v. Twohy*,    .    .    .    it is sufficient according to the doctrine of the more recent case of *Kane v. Nakamoto*,    .    .    .    for the reasons therein given."

We are unable to find any error justifying a reversal, and the judgment is therefore affirmed.

Main, C. J., Tolman, Fullerton, Parker, Bridges, Pemberton, and Mitchell, JJ., concur.

Mackintosh, J. (dissenting)—I cannot agree with this result.