GLADYS NASH vs. JOHN P. WEBBER.

Suffolk.    December 3, 1909. — January 10, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Landlord and Tenant,* Landlord's liability to member of tenant's family, Construction of lease. *Evidence,* Extrinsic affecting writings. *Negligence,* Of one controlling real estate. *Words,* "In," "In said building."

If the seven year old daughter of a woman, who with her family including such daughter occupies a tenement under a lease, is injured by a defect in the premises, she has the same and only the same right to maintain an action against her mother's landlord that her mother would have had, if she instead of the daughter had been injured.

Access to a four story tenement house, the rear of which abutted upon an alleyway, was had by means of two stairways, one of which entered the building from in front and was wholly within the building, while the other was on the outside of the building except that it led from the alleyway in the rear to a platform on the level of the second floor, thence successively to similar platforms on the levels of the third and of the fourth floors. These platforms were used for drying clothes and for other household purposes by the tenants of the building, and ashes and garbage were carried down the stairs from them. The owner of the building let the tenement on the fourth floor by a lease in which he covenanted that he would "at his own expense light and keep neat and clean the common stairs in said building." *Whether* the rear stairs could be said to be "in said building" here it was not necessary to decide, although it was said by SHELDON, J., that it would not be a violent stretch of language to say that they properly might be described as "in" the building.

Where, in a lease of the top floor of a four story tenement house, access to which is had by flights of stairs leading from the front of the house and wholly included within it and also by flights of stairs wholly outside of but connected with the house and leading from an alley at the rear successively to platforms which are used by the tenants on each floor for various household purposes and from which ashes and garbage are carried down the stairways, the landlord covenants with the tenant that he will "at his own expense light and keep neat and clean the common stairs in said building," there is at least room for doubt whether the rear stairways are intended to be included by the words "common stairs in said building," and, at the trial of an action by one of the family of the tenant to recover for injuries alleged to have been due to a failure to remove snow

from the rear stairs, evidence of the conduct of the landlord in cleaning the stairs after previous snowfalls of the same winter is admissible to show the proper scope and intent of the covenant.

At the trial of an action by a member of the family of a tenant on the fourth floor of a tenement house against the landlord to recover for personal injuries alleged to have been caused by the plaintiff on the afternoon of a day in February slipping upon some stairs because the defendant had not removed snow and ice therefrom, whereby, it was alleged, the defendant had broken a covenant in the lease in which he had agreed that he would "at his own expense light and keep neat and clean the common stairs in said building," there was room for doubt whether the stairs upon which the plaintiff fell were a part of the "common stairs in said building," and therefore evidence, tending to show that employees of the defendant after the previous storms of the winter in which the plaintiff was injured had removed the snow and ice from the stairs in question, and also had done so later in the afternoon when the plaintiff was injured, was admissible to show that by his covenant the landlord had intended to take upon himself the care of the stairway in question ; and, in connection with evidence that the tenants themselves did not clean the stairs, and that such stairs led from an alley at the back of the house successively to platforms level with each tenant's apartment which were used by the tenants for various household purposes, and from which employees of the defendant were accustomed to carry ashes and garbage down the stairs for the tenant, and that such rear stairs with stairs at the front of the house formed the only means of access to the tenements, such evidence would warrant a finding that the acts and conduct of the parties had been such as to justify a ruling that the defendant's covenant in the lease was to be applied to the rear as well as to the front stairs of the building.

Evidence tending to show that the landlord of a four story tenement house after each snowfall up to a certain day in February during a certain winter sent men to clean snow and ice from stairways leading from an alley at the rear of the house successively to platforms on a level with each tenement, which were used by the tenants for various housekeeping purposes, that employees of the defendant carried ashes and garbage for the tenant on the top floor from such platform down the rear stairs, that the tenants themselves did not clean the snow and ice from such stairways, and that such stairways were, with some stairs at the front of the house, the only means of access to the premises, would warrant a finding, at the trial of an action for personal injuries against the landlord by a member of the family of the tenant on the top floor, that the landlord had assumed the duty of keeping the rear stairways free from snow and ice, even though in his lease to the tenants he had not covenanted to do so ; and if on such a day in February there had been a four inch fall of snow and on the afternoon of the next day, the snow not having been cleaned from such stairways, the plaintiff, in the exercise of due care, slipped upon the snow and ice upon such stairway and was injured, the landlord might be found to be liable for the injuries so received.

Where, from an alleyway at the rear of a four story tenement house flights of stairs lead successively to platforms on a level and connected with each tenement, which are used by the tenants for general housekeeping purposes and down which employees of the landlord are accustomed to take the ashes and garbage of the tenants, the flight of stairs from the third to the fourth or top floor is intended for the common use of the landlord and the tenant of that floor and is part of the common stairways of the building, although all of the top floor is let to one tenant and such flight is not used by the other tenants.

TORT for personal injuries sustained on February 10, 1906, and due to slipping on snow and ice upon a flight of stairs leading from the rear of an apartment leased by the plaintiff's mother from the defendant on the fourth floor of a tenement building numbered 18 on Bickerstaff Street in Boston. Writ dated April 6, 1906.

The case was tried before *Brown*, J. Beside the facts stated in the opinion, it appeared from the bill of exceptions that there was evidence that the plaintiff, a girl then seven years of age, not having been out of doors all day, was sent by her eldest sister just after noon on February 10, 1906, to do an errand, and was passing down the stairs described in the opinion on her way to do the errand when she fell and was severely injured. There had been a four inch fall of snow on the previous day and the stairs had not been cleaned. There also was evidence that employees of the defendant were accustomed to take ashes and garbage down the rear stairway for the plaintiff's mother.

The plaintiff offered to prove by a number of witnesses that there had been a number of snowfalls previously the same winter and that in each previous instance persons employed by the defendant had cleaned the stairs upon which the plaintiff fell, and that the snow which fell on February 9 was removed from the stairs later in the afternoon of the same day that the plaintiff fell. The evidence offered was excluded and at the close of the plaintiff's evidence a verdict was ordered for the defendant. The plaintiff alleged exceptions.

*G. R. Swasey*, (*W. P. Thompson* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

SHELDON, J. The plaintiff has the same and only the same rights to maintain her action against the defendant that her mother would have under similar circumstances. *Miles* v. *Janvrin*, 196 Mass. 431, 437. *Domenicis* v. *Fleisher*, 195 Mass. 281, and cases cited. *Phelan* v. *Fitzpatrick*, 188 Mass. 237. And the right of the mother must be determined by the terms of the written lease which she took from the defendant, unless those terms have since been modified by the parties.

By that instrument the defendant leased to the plaintiff's mother, Mrs. Nash, " the suite of rooms No. 2 " in the apartment house mentioned therein, for a stipulated monthly rent.

She covenanted, besides other agreements not now material, to keep the premises " in as good repair as the same are in at the commencement of [the] term or may be put in during the continuance thereof," to use the leased premises only as a private residence, and to pay for all inside repairs. The lessor, the defendant, covenanted that he would " at his own expense light and keep neat and clean the common stairs in said building, and will supply the premises hereby demised with hot and cold water, and elevator service, and will heat the premises without extra charge from the first day of October to the first day of May during the term of this lease, except that these provisions shall not apply as to supplying light, water, elevator, or heat at such times as the engines, machinery or apparatus may be disabled by accident or undergoing repairs or alterations."

This apartment house fronted on Bickerstaff Street and was there three stories in height; it ran back in the rear to an alley way, owned by the defendant, which ran from Norway Street to Haviland Street, and on this alley the building had four stories. The tenement leased to and occupied by Mrs. Nash included all of the top floor of the building. Access to this tenement was had by means of two flights of stairs; one called the front stairs, being wholly inside the building and leading from Bickerstaff Street to the successive floors. The other flight started from the rear of the building in the alley and went first up to the rear of what was the first floor on Bickerstaff Street to a piazza or platform which was on a level with that floor and communicated with it; apparently this platform was used for drying clothes or for other purposes by the tenants; then the stairway went to a similar piazza or platform on the level of the next floor, communicating and intended to be used in connection with that floor; then in the same way to a similar platform connected with Mrs. Nash's tenement. These stairs were on the outside of the building, although connected with it, as has been stated. The plaintiff was injured by falling upon this outside stairway, on the second or third tread from the top, by reason of ice and snow which had fallen on the day before this and had not been removed. Her contention is that the defendant, under his covenant in the lease " to light and keep neat and clean the common stairs " in the building, and also by rea-

son of the fact that he had, as she contended, assumed this duty, ought to have removed this ice and snow, and is liable to her for the consequences of his failure to do so. The defendant contends that his duty was limited to the front stairs, which were the only common stairs actually " in " the building.

It may be doubted whether upon the bare words of this lease as applied to the subject matter thereof the defendant's contention can be sustained. These outside stairs were a part of the structure of the building; they would be included as a matter of description in the building. It would not be a violent stretch of language to say that they might properly be described as " in " the building. This construction is made the easier by the fact that a statute of this Commonwealth contemplated that two separate and independent means of egress should be provided for a tenement house like this building. Sts. 1892, c. 419, § 82; 1893, c. 293. It fairly may be presumed that it was the intention of the defendant, in providing this rear or outside flight of stairs, to comply at least with the spirit of this requirement, whether it was actually binding upon him or not.

Instances of giving as broad a construction of this word " in " are not lacking. It was done in *Trenor* v. *Jackson*, 46 How. Pr. 389, 393. In *Blake* v. *Exchange Ins. Co.* 12 Gray, 265, an insurance on goods in a brick building known as a car factory was held to cover goods in another building erected as a wing against the rear wall of the building described in the policy, with an opening through the wall of less than three feet square, upon proof that both the wing and the main building were known as the car factory. In *Brooke* v. *Warwick*, 12 Jur. 912, it was held that a bequest of furniture and other effects " in, upon, or about " a certain house would include articles of the kind named which had temporarily been sent away, and so were not actually in or about the house when the will took effect. Where a testator devised his house with the appurtenances in High Street, and all his buildings in that street, and it appeared that he had only one house in High Street, but had also two cottages fronting on a lane which could be entered only from High Street, it was held that the devisee took also these cottages. *Doe* v. *Roberts*, 5 B. & Ald. 407. In *Old Ladies' Home* v. *Hoffman*, 117 Iowa, 716, it appeared that a testa-

trix had directed that at the expiration of five years after her death the proceeds of her estate should be given to an orphan asylum in the city of Muscatine, or if no orphan asylum was then in existence in that city, then to a home for old ladies in that city, with the provision that either the asylum or the home, if not in existence at the time of her death, might be thereafter organized within the stipulated period. At the end of the five years, the only orphan asylum was outside the corporate limits of the city, though within a mile thereof, and there was an old ladies' home within the city limits. It was held that the orphan asylum was entitled to the bequest.

But however this may be, we are of opinion that evidence of the conduct of the parties and of the practical construction which the defendant had put upon this covenant of the lease was competent, and should have been received. There is at least room for doubt as to the proper scope and intent of this stipulation. As was said by C. Allen, J., in *Winchester* v. *Glazier*, 152 Mass. 316, 323: "It is a general rule for the construction of all written instruments, including deeds, contracts, statutes, and constitutions, that when the language is open to doubt, and parties whose interests are diverse have from the outset adopted and acted upon a particular construction, such construction will be of great weight with the court, and will usually be adopted by it." See also *Attorney General* v. *Algonquin Club*, 153 Mass. 447, 452; *Humphreys* v. *Old Colony Railroad*, 160 Mass. 323, 327, 328; and *Wood* v. *Edison Electric Illuminating Co.* 184 Mass. 523, 528.

Accordingly we are of opinion that the evidence offered by the plaintiff to show that the defendant had taken upon himself the duty of taking care of the outside stairways as well as of the inside or front stairs, and of clearing ice and snow therefrom as a part of his duty, should have been admitted. And we are further of opinion that this evidence, in connection with what was admitted, would have warranted a finding that the acts and conduct of the parties had been such as to justify a ruling that the defendant's covenant in the lease was to be applied, not only to the front stairs, but also to those upon the rear of the building. Also, in our opinion it would have warranted the jury in finding that the defendant had assumed this duty. The con-

duct of the defendant and of his men in this regard could be found to have been more than the mere voluntary making of repairs, with or without the request of a tenant, which would impose no obligation upon a landlord. *Phelan* v. *Fitzpatrick,* 188 Mass. 237. *Kearines* v. *Cullen,* 183 Mass. 298. The defendant is not to be held upon this ground unless it shall be shown that, as to his relations with the plaintiff's mother, he actually had taken upon himself the duty of keeping these stairways clear and free from snow, so that she had a right to rely upon his performance of that duty; but if this is shown, and if there has been a negligent breach by the defendant of the duty which he has thus assumed, the plaintiff, if herself in the exercise of due care, has a right to maintain this action for the injury which his negligence has caused to her. *Miles* v. *Janvrin,* 196 Mass. 431, and 200 Mass. 514. If this full proof is made, the case will be taken out of the general rule as to ice and snow or other obstructions, coming from natural causes, declared in *Woods* v. *Naumkeag Steam Cotton Co.* 134 Mass. 357, and *Watkins* v. *Goodall,* 138 Mass. 533. The doctrine by which the landlord of a tenement house is held responsible for the exercise of due care to keep in a safe condition passageways of which he has retained possession and control would be applied to this case in its full extent. *Readman* v. *Conway,* 126 Mass. 374. *Looney* v. *McLean,* 129 Mass. 33, 35. *Wilcox* v. *Zane,* 167 Mass. 302. *Coupe* v. *Platt,* 172 Mass. 458.

We cannot doubt that the part of the outside stairway between the top floor of the building and the next floor, like the similar flight of the inside or front stairway, was a part of the common passageways of the building. The fact that other tenants might not have to use it so much or in the same way as the plaintiff and her mother is not material. It was at least intended for the common use of the landlord and the tenant of this tenement. It was not parcel of the tenement leased, as was probably the platform to which it led. *Phelan* v. *Fitzpatrick,* 188 Mass. 237. The whole of each stair constituted one common passageway.

*Exceptions sustained.*