Argued September 23; affirmed October 13, 1931

MASSOR *v.* YATES ET UX.

(3 P. (2d) 784)

*T. G. Ryan,* of Portland (David Sandeberg, of Portland, on the brief), for appellants.

*Paul R. Harris* and *C. D. Purcell,* both of Portland (Davis & Harris and C. D. Purcell, all of Portland, on the brief), for respondent.

BELT, J. This is an action in tort for personal injuries. Plaintiff, an elderly woman, was a tenant in an apartment house owned and operated by defendants in the city of Portland. On January 30, 1929, about 9:30 in the morning, she was severly injured by falling on steps covered with snow and ice. These steps were used by the various tenants as a common entrance to the apartment house. Verdict and judgment were had for plaintiff in the sum of $2,500. Defendants appeal.

The denial of the motions for nonsuit and directed verdict presents the questions as to the liability of a landlord to a tenant who is injured as a result of the failure of the landlord to remove snow and ice from a common passageway. The authorities are in conflict. See cases in note 25 A. L. R. 1301. It is a new question in this state.

The steps used by the plaintiff and the other tenants were unquestionably under the control of the landlord. They were not a part of the estate demised to the plaintiff. It was not her duty to clear the steps of snow and ice. She had no authority over the same. This common passageway was a part of the estate reserved by the landlord for the use and benefit of all

of the tenants occupying the apartment house. In 16 R. C. L. 1037 the general rule—well supported by authority—is thus stated:

"* * * where he (the landlord) retains possession of a portion of the leased premises for use in common by different tenants, a duty is by law imposed upon him to use ordinary care to keep in safe condition this particular part of the leased premises, and if he is negligent in this regard, and a personal injury results to a tenant by reason thereof, he is liable therefor."

Most courts apply this rule by requiring the landlord to maintain and keep common entrances in a reasonably safe structural condition, but the divergence of opinion arises over the duty of the landlord to exercise reasonable diligence in keeping them free of such transitory obstructions as snow and ice. In 36 C. J. 219, it is said:

"According to the weight of authority, there is no duty on the part of the landlord to his tenant to remove from the roof, steps, or walk, snow or ice which naturally accumulates thereon, and he is not liable for injuries caused thereby."—citing many authorities in support of the text.

In what might be referred to as the Massachusetts doctrine, the landlord, in the absence of an express or implied contract to do so, is not under obligation to remove snow or ice from a common passageway: *Erickson v. Buckley,* 230 Mass. 467 (120 N. E. 126); *Nash v. Webber,* 204 Mass. 419 (90 N. E. 872). In other words, if the landlord takes upon himself the duty of keeping stairways and steps used in common by different tenants, clear of snow and ice, he must exercise reasonable diligence in guarding against such danger, and, upon his failure so to do, damages may be recovered.

If it is the duty of a landlord to make repair of structural defects, of which he has notice, in a common passageway, it is difficult to see why he is not likewise under duty to remove snow or ice accumulated on steps under such circumstances as to become dangerous to the different tenants obliged to use the entranceway. In our opinion, the distinction is not based upon sound logic or reason. As stated in *Reardon v. Shimelman,* 102 Conn. 383 (128 Atl. 705, 39 A. L. R. 287):

"Approaching the question from the standpoint of principle, we are wholly unable to justify the Massachusetts rule. The duty of the landlord being to exercise reasonable care to prevent the occurrence of dangerous or defective conditions in the common approaches, the fact that a particular danger arose from the fall of snow or the freezing of ice can afford no ground of distinction. Indeed, the causes which are at work to produce it are no more natural causes than are those which, more slowly, bring about the decay of wood or the rusting of iron. To set apart this particular source of danger is to create a distinction without a sound difference."

The Massachusetts rule is likewise criticized in the well reasoned case of *United Shoe Mach. Corp.v.Paine,* 26 F. (2d.) 594, 58 A. L. R. 1398). In the one case as in the other, if the landlord has notice of a dangerous condition of a way reserved by him for the use and benefit of his tenants, it is his duty to exercise reasonable diligence to protect them from such danger. We think the better rule to be that a landlord who knows or ought to know of a dangerous condition of a common passageway caused by the accumulation of snow or ice is bound to exercise reasonable diligence to remove the danger. We see no sound reason to restrict the duty of the landlord to the maintenance of the passageway to the suitable repair of structural defects: *Rear-*

*don v. Shimelman,* supra; *United Shoe Mach. Corp. v. Paine,* supra; *La Plante v. La Zear,* 31 Ind. App. 433 (68 N. E. 312). The recent case of *Gobrecht v. Beckwith,* 82 N. H. 415 (135 Atl. 20, 52 A. L. R. 858), while not based upon similar facts, supports the principle which we have announced. This is a flexible rule and it does not make the landlord a guarantor of the safety of the tenant but obliges him only to use that degree of care which an ordinarily prudent person engaged in the operation of an apartment house would have exercised under similar circumstances.

 However, we think the facts in the instant case would not preclude a recovery even under the holding of the Massachusetts court in *Erickson v. Buckley,* supra, and *Nash v. Webber,* supra. If the testimony of the plaintiff is to be believed, snow and ice had accumulated on the steps for a period of about 12 days. While there was no express agreement on the part of the landlord to clear away snow and ice, it is apparent from the evidence that he actually undertook to do that very thing. His course of conduct might readily lead the tenant to believe that he had assumed such an obligation. The defendant Yates testified that the snowfall lasted about ten days or two weeks and that during such time he worked ''practically continuously'' trying to keep the snow cleared off. Mrs. Yates testified:

''Well, it was a standing joke in the neighborhood about Mr. Yates cleaning snow and ice from our place. He would go out the first thing in the morning after breakfast * * * and he would work then until he would tire himself out and come in and put on dry clothing and get warm and start out again, because there was practically no business in the office at that time and that was all he did.''

It would seem from this testimony that the defendant landlord had assumed the duty of clearing the snow and ice from the steps and that he would have the jury believe that he exercised a high degree of diligence in that regard. The testimony is, indeed, inconsistent with the theory now advanced that the landlord exercised no control over the demised premises. We also recall the fact that a janitress was in charge of the apartment house and, according to the testimony of the plaintiff, it was her duty to "look after" the front steps.

In view of the conclusion reached, we think it is not necessary to consider the assignments of error relative to the instructions of the court regarding the necessity of showing that the landlord expressly or impliedly agreed to remove the snow and ice. The instructions given were more favorable to the defendants than the law warrants.

■■ The question of contributory negligence is one of fact for the determination of the jury. If plaintiff knew that the steps were in a dangerous condition it was incumbent upon her to exercise a higher degree of care, but we cannot say, as a matter of law, that she failed to use that degree of care which an ordinarily prudent person would have exercised under similar circumstances: *Reardon v. Shimelman, supra; Roman v. King,* 289 Mo. 641 (233 S. W. 161, 25 A. L. R. 1263).

■ Defendants assign as error the alleged misconduct of counsel for plaintiff in that, in the examination of jurors, "he said that since the injury plaintiff had been taken care of as a common charge." We think there was no error in denying the motion to dismiss the jury for the reason that it had been unduly prejudiced by having its attention called to the fact that

plaintiff was without means. It must be conceded that counsel made the most of his opportunity, but it was bound to appear in the evidence that she was an inmate of the Multnomah county hospital, as those in charge of the same were called upon to testify as to her physical condition. Neither does the amount of the verdict indicate that the jury was swayed by passion or sympathy. We see no analogy between this case and those cited wherein counsel deliberately directed the attention of the jury to the fact that the defendant carried indemnity insurance.

■ The court did not commit error in refusing to strike the entire testimony of witness McFarland. While there were certain parts of this testimony which should have been stricken, the motion was entirely too broad. Certainly that portion of the testimony concerning the general physical condition of the plaintiff which was obtained through observation was admissible.

Finding no error in the record which would warrant a reversal, it follows that the judgment of the lower court is affirmed.

KELLY, BROWN and CAMPBELL, JJ., concur.