Argued September 6, affirmed October 3, 1950

PRITCHARD *v.* TERRILL

222 P. (2d) 652

*Howard K. Beebe* argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison & Bailey, and William E. Dougherty, all of Portland.

*J. Robert Patterson,* of Portland, argued the cause and filed a brief for respondent.

Before Lusk, Chief Justice, and Brand, Hay, Latourette and Warner, Justices.

LATOURETTE, J.

This is an appeal by defendant from a judgment awarding plaintiff damages for injuries sustained from falling down a stairway in defendant's apartment house in Portland, Oregon. Defendant assigned as error (1) denial of her motion for non-suit, and (2) denial of her motion for a directed verdict. Both involve substantially the same legal questions and, therefore, will be treated together. Under these assignments defendant first urges that there is no evidence of negligence to warrant the case going to the jury against defendant, and, secondly, that it affirmatively appears from the plaintiff's testimony that he was guilty of contributory negligence as a matter of law.

Plaintiff and his wife occupied a two-room apartment on the first floor of the apartment house operated by defendant, having moved into the same about December 30, 1946. The accident occurred on May 5, 1947. Prior to moving into the apartment plaintiff had been engaged in logging and heavy equipment operations and later had helped his wife take care of another apartment house in which they had lived. Plaintiff had a wood-burning stove in his apartment and obtained his wood from the defendant, the wood being stored in the basement of the apartment house. To get the wood from the basement to his apartment, it was necessary for plaintiff to use the basement stairs which he did nearly every day during his tenancy. The stairs were eight in number, and the tread of each stair was a wooden board 2 inches thick and 8 or 10 inches wide and approximately 2½ feet in length. The apartment house was constructed in about 1885 and was anything but modern.

Shortly after plaintiff moved into the apartment, he noticed that the second step from the top of the stairs was "loose, and it would rock on the edge when you step on it, you know, the front part of the step. There was a break across there or something, and when you would step on it, it would rock in the front part of it."; whereupon, he advised the defendant that she had a bad step and that it was dangerous. Defendant told him she would have someone come in to repair it. Later on plaintiff met defendant in the hallway on an occasion after he had climbed the stairs with a boxful of wood and mentioned to her that she had not as yet had the step fixed, and she told him that she would have it attended to. Plaintiff also testified that he thought he had mentioned the matter to the defendant a third time.

The evidence shows that the step in question overhung the lift of the step by approximately 2 inches. The pictures introduced in evidence disclose that the underpinning of the step was sound.

■ The law is well-settled in Oregon, as is laid down in the case of *Lyons v. Lich et al.,* 145 Or. 606, 610, 28 P. (2d) 872, that:

'the owner of an apartment house has the duty toward the occupants of the apartment house and guests of said occupants to exercise ordinary care for their protection and to see that the portion of the premises over which the owner retains control is in a reasonably safe condition of repair, but such apartment house owner is not an insurer against all forms of accidents that may happen to any who come on such premises.'

See *Massor v. Yates,* 137 Or. 569, 3 P. (2d) 784; *Asheim v. Fahey,* 170 Or. 330, 133 P. (2d), 246, 145 A. L. R. 861.

■ In the instant case the evidence is that the step was patently defective and that the defendant had had notice of its defective condition and did nothing to repair it, and whether or not she used that degree of care which the ordinarily prudent person would have used under like or similar circumstances is a question for the jury and not for the court. There was no error, therefore, on the part of the court in denying the motion of defendant for non-suit.

■ Ordinarily, the question of contributory negligence on the part of the plaintiff resolves itself into a question of fact of which the jury is the sole arbiter; however, where the court can say that ordinarily intelligent, reasonable and fair-minded men would not and ought not to believe that the plaintiff was acting as an ordinarily prudent person would have acted under the circumstances, the question of plaintiff's contributory negligence is for the court rather than for the jury.

In the case of *Ashmun v. Nichols*, 92 Or. 223, 239, 178 P. 234, 180 P. 510, the court said:

"The question of contributory negligence was clearly one for the jury. When plaintiff found the steps were in a dangerous condition she was in the actual occupation of the premises with her family and household goods. She had the choice of remaining until the repairs were made, or attempting to remove to some other place. To do the latter she would first have to find a place to which she could remove. She had the landlord's general promise to repair. She notified him at once about the dangerous condition of the steps, and he promised to repair them *immediately*. Under those circumstances, according to her testimony, she remained on the premises, using the steps carefully. We

think it was clearly a question for the jury as to whether she was negligent in so doing, and as to whether the defendant was negligent in delaying to repair.''

In the case of *Massor v. Yates,* supra, the court, after citing the cases of *Reardon v. Shimelman,* 102 Conn. 383, 128 A. 705, 39 A. L. R. 287, and *Roman v. King,* 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263, said:

'The question of contributory negligence is one of fact for the determination of the jury. If plaintiff knew that the steps were in a dangerous condition it was incumbent upon her to exercise a higher degree of care, but we cannot say, as a matter of law, that she failed to use that degree of care which an ordinarily prudent person would have exercised under similar circumstances.'

■ We will now narrate the facts in the case interspersed with quotations from the testimony, bearing in mind that we must view the record in the light most favorable to plaintiff. At the outset it must be understood that plaintiff's testimony given at a former trial and the testimony given in his depostion were received in evidence by stipulation of the parties and must be considered along with the evidence produced at the trial of the case.

Plaintiff, shortly after he became a tenant, noticed that the edge of the step in question was broken and loose and would rock on the edge when he stepped on it. He notified the defendant of such condition, and she promised to repair it. He continued to use the step in going up and down the basement stairs over a period of four months. On two or three occasions during that period, he called defendant's attention to the defective step, and she did nothing to remedy this

condition. The portion of the step which broke was 2 inches in width and is an exhibit in the case. This part of the step protruded or lipped over the riser. While using the step during this period, he noticed that the edge of the step would tip when he would step on it. He testified that he knew that the step was "busted and in bad shape" and "dangerous," and that he "was very careful about stepping on it."

As to what happened at the time of the accident, plaintiff testified as follows:

"Well, I had went to the basement with this box that I carried the wood up in, put some wood in it and come up the steps. Knowing that the step was broken I was always very careful and I stepped on this step towards the back like I always was careful about it, but this time the step completely gave way and I fell backwards down the stairway."

It is disclosed by the evidence that there were a number of tenants occupying the apartment house who used the stairway periodically in going to and from the basement. Three of them testified on behalf of defendant to the effect that they had never noticed any broken step on the stairway. Defendant, who also occupied the apartment house, testified to the same effect. Appellant, in her brief, says:

"The accident he described could not conceivably have occurred unless he negligently placed his weight on the outer edge of the step and tipped the broken piece backward. Had he used the major portion of the step which was sound, there could not have been an accident such as he claims."

■ Plaintiff testified that he did use the major portion of the step which was sound as he ascended the stairs, and since there was only a space from 6 to 8

inches between the crack of the forward portion of the step and the back wall of the step, the jury could easily have inferred that the heel of his shoe rested on the broken tip when he stepped on the step, which, on account of its defective condition, gave way through wear of time. Whether or not plaintiff, at the time and place in question, acted as a reasonably prudent person would have acted under like or similar circumstances was in our opinion a question for the jury and not for the court.

Defendant has cited five cases from other jurisdictions which, in our opinion, have no application here. One of them involved an injury to plaintiff while passing through swinging doors; two others involved injuries to the plaintiffs while stepping into holes which were plainly apparent; another involved the pulling down of a Murphy-In-A-Door bed, during which operation the bed fell on plaintiff, plaintiff having full knowledge that the bed was out of order and would come down ''too quick;'' the other involved a situation wherein plaintiff proceeded in the darkness and missed a tread of the stairs, the negligent charge being the failure to properly light the stairway.

Defendant, in her brief, states:

''Plaintiff was better able to avert the injury. Under the circumstances plaintiff should not have passively accepted the condition after he knew the landlady did not appreciate the danger as he did.''

This contention is refuted by the holding in *Ashmun v. Nichols, supra.*

■ Defendant argues that plaintiff was negligent in not taking affirmative action such as repairing the defective step. In this connection she cites *Stoops v.*

*Carlisle-Pennell Lumber Co.,* 127 Wash. 82, 219 P. 876, and *Busick v. Home Owners Loan Corporation,* 91 N. H. 257, 18 A. (2d) 190. In the Stoops case, the Supreme Court of Washington embraced the "assumption of risk" rule in cases between landlord and tenant. So far as we have been able to ascertain, Oregon has never adopted this rule excepting where the relationship of master and servant appertains. In the above case, the tenant, a capenter, knew of the defective condition of the step over a period of months and knew of the failure of the landlord to repair after notice and continued to use the step until it broke under his weight. The court held that under the circumstances the tenant could not recover in an action for damages against his landlord. Among the reasons given for the holding was that the tenant, being a carpenter, should have remedied the defect in the stairway. In Oregon there is no duty upon the part of the tenant to repair a step which is under the control of the landlord, and his failure to so repair could not be urged as contributory negligence.

In the case of Busick, supra, the tenancy covered a dwelling house, the plaintiff having fallen on one of the steps leading to the porch. The steps were under the control of the tenant, not the landlord. Obviously this case is not in point.

There being no error, the judgment will be affirmed.