Argued October 20, 1954, reversed and dismissed March 2,
petition for rehearing denied March 30, 1955

## FARLEY *v.* PORTLAND GAS & COKE COMPANY
### 280 P. 2d 384

*Henry S. Gray* and *Gerald J. Norville,* of Portland,
argued the cause for appellant. On the brief were
Laing Gray & Smith, of Portland.

*Stewart Whipple,* of Portland, argued the cause for respondent. With him on the brief were Easley, Whipple & McCormick and Carl Robert Wells, by Carl Robert Wells, all of Portland.

Before Latourette[*], Chief Justice, and Warner[**], Rossman and Brand, Justices.

BRAND, J.

In her complaint the plaintiff alleges that she went to the office and showroom of the defendant, a corporation, in Portland, Oregon, to pay her gas bill, and after so doing, she proceeded toward an exhibit of new equipment just to the west of the Salmon Street entrance to said building, "when she tripped over and fell upon a low platform upon which said equipment was resting." She alleges that the defendant was negligent in placing a low platform on the floor, thereby causing a hazardous condition to exist, and in failing to warn the plaintiff of said hazardous condition and in failing to place a barrier around said platform. She alleges that as a proximate result of the defendant's negligence, she was hurled to the floor and thereby caused to sustain serious injury, the nature of which is set forth in the complaint. She then asks for damages. To this complaint the defendant filed an answer, which is in substance a general denial of all allegations of negligence, but the defendant admits that the plaintiff fell "partly upon and over a low platform in said showroom upon which an exhibit of equipment was resting. * * *" Defendant also admits that the plaintiff suffered a fractured wrist and was hospitalized.

---

[*] Chief Justice when this case was argued.
[**] Chief Justice when this decision was rendered.

As an affirmative answer the defendant alleges that it had installed a display of kitchen equipment and appliances westerly of and near the Salmon Street entrance to its showroom. It is alleged that the display was mounted on a platform or floor, the top surface of which was raised to a height of approximately three inches above the regular floor level; that platform was edged with a metallic strip which clearly marked the edge thereof and which set said platform distinctly apart from the main floor level on which it was placed. It is further alleged that said display, including the platform, was at all times clearly and adequately lighted and said metallic strip on the edge of the platform was clearly discernible by and visible to all persons who approached or neared said platform to view said display. It is then alleged that if in truth and fact the plaintiff tripped over said platform, as alleged in her complaint, she was not at said time and place exercising due and reasonable care for her own safety and was negligent in the following respects, to-wit: (1) That she failed to notice where she was walking; (2) that she failed to observe the physical layout of said exhibit; (3) that she failed to exercise a reasonable and proper lookout at said time and place, and (4) that she failed to exercise reasonable care or any care for her own safety. It is alleged that the plaintiff's own negligence in one or more of the said particulars directly and proximately caused whatever injuries she sustained by reason of her falling at said time and place. The reply is a general denial.

Upon trial the jury returned a verdict in favor of the plaintiff and assessed damages in the sum of $4,500. Judgment was entered upon the verdict. Thereafter the defendant filed a motion for judgment notwithstanding the verdict, based upon the contention that

the court should have granted defendant's motion for a directed verdict, which was made at the trial. Defendant in the alternative filed a motion for a new trial, which was based upon the defendant's contention that the evidence at said trial was insufficient to support a verdict for the plaintiff and upon the defendant's further contention that the verdict was against the law in the particulars therein set forth. The motion was heard by the court and denied. The defendant appeals.

By its first two assignments of error the defendant asserts that the court erred in denying its motion for a nonsuit and thereafter in denying its motion for a directed verdict. Both motions adequately raised the question as to whether there was sufficient evidence to go to the jury on the issue of negligence by the defendant, and also presented the contention that the plaintiff was guilty of contributory negligence as a

matter of law. We will consider the two assignments of error together.

The plaintiff testified that she was a user of Gasco briquets which she bought and paid for each month at the Gas Company office on Sixth and Salmon Streets in the city of Portland, and that she was there on the fifth day of February, 1952, with her little grandchild, five years of age. The fact of the plaintiff's fall is established but there were no eye witnesses to it.

When she was paying her gas bill, plaintiff was looking at the model kitchen exhibit, or model kitchen display. The model display was probably three-quarters of the distance across the building. The plaintiff introduced in evidence a photograph of the kitchen display and testified concerning it, that the picture approximately or accurately reproduces the conditions as they then existed. The picture is reproduced herewith. The plaintiff testified that she first became aware of the difference in the floor level, as indicated in the picture, when she fell. Concerning the manner of her fall, plaintiff testified that she fell ''awful funny. I was kind of picked up and thrown. Sometimes I think I got my toe caught in something, but I wouldn't say for sure, but that is the way it felt to me at that time. I couldn't say that.'' She was asked to state what if anything she was observing as she was walking over toward the kitchen display, to which she answered that she was just looking straight ahead of her. She said that she saw the display and that it was the first time that she had seen it, although she had been going in there every month. The plaintiff was asked if she didn't think that the office was a well-lighted one, to which she answered, ''Well, the same as usual, yes.'' However, she said that she knew that it

wasn't very bright when she fell because the floor was "real dark." The floor was dark, "kind of fancy." She did not know whether she caught her heel or stubbed her toe on the edge of the platform. Her five-year-old granddaughter was with the plaintiff at the time, and was up on the platform ahead of the plaintiff. The evidence is undisputed that the household appliances which were on the floor of the display room were laid out in straight rows to form aisles or passageways about seven or eight feet in width. At the end of one of the rows and along one side of the showroom was the model kitchen display. It was not located in an aisle through which persons might pass, but was in the nature of a cul de sac. It was set on a platform 12 feet long, eight feet wide and about two and one-half inches high. The base of the platform was formed by two-by-fours laid flat with a wooden frame of three-fourths inch boards placed on top of the two-by-fours. The platform was covered with black linoleum with a multi-colored speckled or mottled design. The floor of the showroom was tile—dark red or terra cotta in color. Around the base of the platform, and covering the edge of the boards was an aluminum strip three-fourths of an inch in width.

The picture which is reproduced herewith was introduced in evidence by the plaintiff and discloses the situation with clarity. Testimony as to the physical conditions adds to our understanding merely the facts concerning the lighting of the area and the fact that there was an unobstructed area eight to ten feet in depth directly in front of the platform. The lighting in that area of the building was excellent and was equal to that in other of the great stores in the city of Portland. There were flood lights displaying the model kitchen, which cast a broad over-all light, and which

diffused the light over the area and provided the general lighting of the area.

The plaintiff acknowledged as a witness that the floor of the showroom was a different color from the floor of the little platform. After her fall she sat down in a chair in front of the model kitchen display and then looked and observed without difficulty the elevation of the platform. The only other witness for the plaintiff was the physician who treated her injuries.

After the trial of the motion for nonsuit the defendant called three witnesses, and to their testimony there was no rebuttal. One witness, a salesman on the floor of the showroom testified that some hundreds of people, mostly women, had inspected the model kitchen during the period prior to the plaintiff's fall, and that to his knowledge no one had ever tripped or fallen over the platform. He also testified that the lighting was excellent. Three flood lights were trained on the cabinets and appliances from columns adjacent to the platform.

This case differs materially from the many cases cited by plaintiff, and later to be analyzed, in which platforms and other obstructions were so placed that they protruded into the aisles through which the patrons of the store traveled. The model kitchen display more nearly represented a stage setting for display purposes, leading nowhere. We turn to the authorities.

The law concerning the duty of storekeepers to invitees is well established in this jurisdiction and need not be repeated here. *Fox v. Royce*, 194 Or 419, 242 P2d 190; *Lee v. Meier & Frank Co.*, 166 Or 600, 114 P2d 136; *Lopp v. First National Bank of Portland*, 151 Or 634, 51 P2d 261; *Briggs v. John Yeon Co., Inc.*, 168 Or 239, 122 P2d 444; *Starberg v. Olbekson*, 169 Or 369,

129 P2d 62; *Saunders v. A. M. Williams & Co.*, 155 Or 1, 62 P2d 260. See also *Waller v. Northern Pacific Terminal Co.*, 178 Or 274, 166 P2d 488; *Pritchard v. Terrill*, 189 Or 662, 222 P2d 652. There is no conflict in the evidence, a fact which suggests that the issue of negligence may be one of law for the court. We have held, however, that where different reasonable inferences may be drawn from undisputed evidence, the question is for the jury. *Larkins v. Utah Copper Co.*, 169 Or 499, 127 P2d 354. On the other hand, we have held that

> "Evidence free from dispute, and from which no conflicting inferences can be drawn, presents no issue for the jury; its disposition is the duty of the judge. * * *"

A finding for the plaintiff by a jury does not establish that reasonable inferences of negligence may be drawn from undisputed facts. The concept of the "reasonable man" is an abstraction created by the law and the legal sufficiency of such evidence is a question of law for the court. 88 CJS, Trial, § 211, p 473.

In *Powers v. Montgomery Ward & Co.*, 251 App Div 120, 295 NYS 712, the facts were as follows:

> "In the center of the basement running northerly and southerly, there is a row of posts used to support the floor above. There were rows of tables on each side of the center. Between the posts and in line with them there were tables or counters for the display of merchandise, with aisles on the east and west sides thereof. In one space between posts there was a platform 11 feet long, 22 inches wide, and 4½ inches high. On the westerly side of this platform there was an aisle 42 inches wide and an aisle on the easterly side 38 inches wide. At the time of the accident this platform was used to display doll buggies and kiddy carts. These doll buggies were 24 inches high, 24 inches long, and 8 or 10 inches wide."

Plaintiff tripped over this platform. There is no indication that the platform protruded beyond the line of the tables. The court said:

"The question to be determined in this case is whether or not the evidence shows any negligence on the part of the defendant.

\* \* \* \* \*

"Certainly the platform used to display goods in defendant's store was in plain view of any person using his eyes, and it was not a hidden or concealed danger which the defendant was required to guard against, and the use thereof did not unreasonably expose plaintiff's intestate to danger.

"The evidence does not show that the defendant failed in its duty to keep its place of business reasonably safe for use by plaintiff's intestate and other customers."

The judgment of the Appellate Division was affirmed by the Court of Appeals, 276 NY 600, 12NE2d 595.

In *Parker v. Jordan Marsh Co.,* 310 Mass 227, 37 NE2d 465, there was a verdict for plaintiff. Thereafter the court granted judgment n.o.v. which was affirmed by the Supreme Court of Massachusetts. The plaintiff went to the "zipper counter" and made a purchase.

"\* \* \* Five and one half feet from the left end of this counter as she stood there, and behind her, was a platform, two and one half feet wide, fifty-nine inches long, and three and one half inches high, upon which were life sized models, without heads, displaying dresses. At the far end of this platform there was a table, two and one half feet wide and five and one half feet long upon which other merchandise was displayed, and the far end of the table was against a post or column. The platform and table were three and one half feet from the counters on the left of the aisle, and the table was six feet eight inches from the end of the near-

est long counter on the right as she stood when making her purchases. At the plaintiff's right was another aisle, ten feet in width, and from the right end of the zipper counter it was ten feet to the end of this nearest long counter. The plaintiff testified that the store was well lighted; that she was in the immediate vicinity of the zipper counter for about twenty minutes talking with an employee; that she turned around, took a few steps and fell, and that she did not know what she 'went over' but knew that she was on the floor. She was seen in the act of falling directly beside the platform, which she testified she had not seen. The only evidence as to where the plaintiff was on the floor was that she was in the aisle, with the platform on her right, that is, that she was not in the three and one half foot space between the platform and the side counters. There was no evidence of any persons in the vicinity other than the plaintiff, the employee with whom she was talking, and a clerk at one of the counters.

"If we assume that the jury were warranted in finding that the plaintiff fell over the platform, and also that she was not contributorily negligent, nevertheless, we are of opinion that there was no error, in that a finding would not have been warranted that the defendant was negligent."

The court stated the rules of law concerning the defendant's duty of reasonable care and then continued:

"* * * Upon all the evidence, including a photograph that shows the platform, table and 'large aisle' along which the plaintiff walked after entering the store, we are of opinion that it could not have been found that the defendant was not making a reasonable use of its premises consistent with its business, or that it was required to warn the plaintiff against dangers attendant upon their use by her." Citing many cases.

In *Sterns v. Highland Hotel Co.*, 307 Mass 90, 29 NE2d 721, plaintiff, 76 years of age, was leaving the

hotel through a revolving door which was within a few inches of the edge of a 4½ inch step down to the sidewalk level. The revolution of the door was accelerated by a third person, and as she stepped out, she fell. The trial court directed a verdict for the defendant. On appeal the Supreme Court of Massachusetts said:

"It is a matter of common observation that in 'entering and leaving stores, halls  *  *  *  office buildings, and other buildings  *  *  *  adjoining surfaces are frequently at different levels; and the difference in level has to be overcome by one or more steps, of greater or less height, or by some other device.  *  *  *  We cannot think that such a construction is of itself defective or negligent.' [citing cases]  *  *  *  Steps of greater or less height are the usual, but not the only, means of overcoming such differences in levels, and it is the general rule in this Commonwealth that, in the absence of some unusual condition, by the employment of a step for such a purpose the landowner violates no duty to his invitees." Citing cases.

Finally the court said:

"Where a condition is obvious to any ordinarily intelligent person, it is the general rule that there is no duty on the part of the defendant to warn of that condition.  *  *  *"

Judgment for defendant was affirmed.

In *Tehan v. Freed*, 261 App Div 969, 25 NYS2d 882, plaintiff fell at or near two steps in the store leading to a lower level. It was claimed that they constituted a trap. Verdict went for the plaintiff. On appeal the court said that "The steps were obvious to anyone who cared to look." The place was well lighted. The court held that plaintiff was guilty of negligence as a matter of law and that no negligence on defendants' part was inferable from the evidence.

In *Wessner v. Blue Ridge Transp. Co.*, 338 Pa Super 161, 12 A2d 559, a lady entered a toilet compartment which was built on a platform about six inches higher than the main floor of the rest room. On leaving the compartment she opened the door and stepped out without looking, and fell. It was asserted that defendants were negligent in that the platform should have been extended beyond the door of the compartment. There was a verdict for plaintiff, followed by a motion for judgment n.o.v. There was no evidence of inadequate lighting or of a slippery step. On appeal the Supreme Court of Pennsylvania said:

"* * * The platform was of only ordinary height. Under these circumstances, it would be thoroughly pernicious to permit the jury to speculate with the rights of the defendants."

In *Smith v. Emporium Mercantile Co.*, 190 Minn 294, 251 NW 265, the facts closely resemble those in the case at bar. In walking on the main floor toward the steps leading to the bakery, plaintiff's right foot struck against the corner of a platform on the right side of the aisle in a department store. A fall resulted. The platform was a movable wooden structure, 15 feet long, four feet-nine inches wide, and according to the plaintiff, four inches high. It stood lengthwise along an interior wall. The aisle in which plaintiff walked passed in front of the platform. Evidence was conflicting as to whether the platform was back against the wall or whether it protruded a few inches into the aisle. The court accepted the evidence most favorable to plaintiff. The court found from uncontradicted facts that:

"* * * There was ample aisle space for passage in front of and past the ends of the platform. There was no crowd, and the nearest person to

plaintiff in the aisle was some six feet ahead of her. There was nothing to distract her attention, and she was looking ahead. The platform was painted or stained a dark color. The floor was light gray tile. There was nothing on or about the platform tending to cover or obscure the outlines thereof. There were on the platform some washing machines and other articles, and an employee was standing thereon to demonstrate the washing machines. The platform was such as is ordinarily used in this and other department stores for the display of merchandise, and was being used in the ordinary and customary way. The store was properly and sufficently lighted.

\* \* \* \* \*

"Where an ordinary device, such as this platform, customarily used in stores for the display of goods, is placed in a well-lighted position, is plainly observable, with nothing to conceal its presence and outlines, and with sufficient passageways going by it, the shopkeeper should not be held negligent as to one heedlessly colliding therewith. [Citing cases] To hold otherwise would impose too high a degree of care upon a shopkeeper and in effect make him an insurer of the safety of customers."

In *Haddon v. Snellenburg et al,* 293 Pa 333, 143 A 8, plaintiff was walking in the balcony of defendant's store. She fell at a point where there was a step down of six inches from one floor level to another. The court said:

"\* \* \* It is not negligence per se or negligent construction in a store or other public place to have one floor at a lower level by a few inches than another. Where such difference in elevation exists, the place should be sufficiently lighted artificially to enable users to see the step, unless lit by daylight. There is no evidence to show lack of either daylight or artificial light. Unless we hold that de-

fendant was an insurer of the safety of its invitees, we must conclude plaintiff did not make out a case, as there is not a scintilla of evidence to establish negligence.  *  *  *''

As will later appear the plaintiff relies upon a number of cases in which persons have stumbled over the low platform of penny-in-the-slot weighing machines. Where the platforms extended into an aisle, it has been held that a jury question was presented. By way of making a clear distinction we refer to *Engdahl v. Owl Drug Co.*, 183 Wash 100, 48 P2d 232. In that case the scale was placed out of the line of travel. It did not extend into the aisle. The court quoted from *Smith v. Emporium Mercantile Co.*, supra, and said:

> "In reaching our conclusion that the respondent did not make a case for the jury, we have not overlooked the well-recognized principle that the court possesses no element of discretion in passing upon motions for a directed verdict or for judgment notwithstanding the verdict, and that the motion will be granted only where there is absence of any evidence, or inference from evidence, upon which reasonable minds might differ. We are of the opinion that there is here a total lack of any evidence of negligence on the part of the appellant."

For other cases supporting the view that there was no substantial evidence of negligence on the part of defendant storekeeper, see also: *Benton v. United Bank Building*, 223 NC 809, 28 SE2d 491; *Boyle v. Preketes*, 262 Mich 629, 247 NW 763; *Cates v. Evans* (Mo 1940), 142 SW2d 654; *Smith v. Mannings, Inc.*, 13 Wash2d 573, 126 P2d 44; *Adriance v. Henry Duncan Corp.*, 291 Mass 202, 196 NE 906; *Griffin v. Fletcher Hardware Co.*, 327 Mass 235, 97 NE2d 744.

For authorities discussing the specific nature of the duty of storekeepers to invitees, see: 4 Shearman &

Redfield on Negligence, § 780, p 1793; 2 Restatement of the Law, Torts, § 343; 38 Am Jur, Negligence, § 136, p 796; Prosser on Torts, p 642.

The plaintiff has cited many authorities, all of which we have carefully examined. They fall into several groups and may be dealt with as such. The first group includes cases in which recovery has been had by an invitee by reason of negligence of a defendant in placing excessive oil upon the floor, or in failing, after actual or constructive notice to remove slippery material from the floor. The cases of this type which are cited by plaintiff are: *Bickley v. Sears-Roebuck & Co.*, 62 Ohio App 180, 23 NE2d 505; *Driscoll v. Wallace Mercantile Co.*, 197 Minn 313, 266 NW 879; *Glenn v. W. T. Grant Co.*, 129 Neb 173, 260 NW 811; *Ralston v. Merritt*, 117 Pa 487, 178 A 159; *Smith v. Mannings, Inc.*, supra, 13 Wash2d 573, 126 P2d 44; *Wiard v. Market Operating Corp.*, 178 Wash 265, 34 P2d 875. These cases add nothing to the well-established rule found in our own decisions which recognize that liability may result from such conduct: *Briggs v. John Yeon Co., Inc.*, 168 Or 239, 122 P2d 444; *Lopp v. First National Bank of Portland*, 151 Or 634, 51 P2d 261; *Hovedsgaard v. Grand Rapids Store*, 138 Or 39, 5 P2d 86. These cases involve an inherent and hidden danger to persons who are walking in the aisles maintained for the very purpose of what might be called local and through pedestrian traffic by persons entering, leaving or shopping in the store. Furthermore, they must be read in the light of the more recent case of *Vinson v. Brown*, 193 Or 113, 237 P2d 501, where it was held that the mere fact that a linoleum floor had been recently waxed in a proper manner raised no inference of negligence. The entire situation is distinguishable from that with which we are now concerned.

The next group of cases cited is concerned with obstructions to travel placed or permitted to remain in the store aisles reserved for the use of invitees. A number of these cases involve accidents in which persons stumbled over the low foot platforms of penny-in-the-slot weighing machines. Cases of this kind are: *Dowling v. MacLean Drug Co.*, 248 Ill App 270 (1928); *Thompson v. F. W. Woolworth Co., Inc.*, 100 Ind App 386, 192 NE 893; *Walsh v. Maurice Mercantile Co.*, 20 Cal App2d 45, 66 P2d 181. In each case the low base of the machine projected out into the aisle. The question of negligence was for the jury. These cases are to be contrasted with *Engdahl v. Owl Drug Co.*, supra, where the machines did not project into the aisle and where it was consequently held that there was no evidence of negligence.

Even where the scales were placed in the aisle the authorities are not in harmony. In *Tinley v. F. W. Woolworth Co.*, 70 Ga App 390, 28 SE2d 322, the scales projected into the aisle with a platform one inch high and an upright standard 4½ feet high. The complaint set forth these facts but failed to state that the scales were concealed from plaintiff's view. A general demurrer was sustained. On appeal it was held that plaintiff was not exposed to any unreasonable or concealed danger. Judgment for defendant was affirmed.

Other cases cited by plaintiff wherein it was held that there was some evidence of negligence involved various types of obstacles *placed* in the store aisles: *Blackwell v. J. J. Newberry Co.*, Mo App (1941), 156 SW2d 14 (30 inch-high step ladder in aisle partly concealed under projecting counter.); *Casciaro v. Great A. & P. Tea Co.*, 238 Mo App 361, 183 SW2d 833 (boxes of groceries on floor in aisle of self-service store. Judgment was reversed for want of evidence as to who

placed the boxes in the aisle.); *Finnegan v. Goerke,* 106 NJL 59, 147 A 442 (large box placed in aisle outside counter of department store. Plaintiff's view obscured by other shoppers.); *Griffin v. Cascade Theatres Corp.,* 10 Wash2d 574, 117 P2d 651 (plaintiff walked on a rubber mat placed for patrons to walk on, and stumbled on a projecting low portion of an advertising sign— view obstructed.); *Long v. F. W. Woolworth Co.,* Mo (1942), 159 SW2d 619 (Plaintiff's heel caught in hole in floor—a trap. Not in point.); *Phillips v. Montgomery Ward & Co.,* (CCA 5th 1942), 125 F2d 248 (box protruded half-way into aisle.); *Ober v. The Golden Rule,* 146 Minn 347, 178 NW 586 (parallel rows of merchandise tables—display frame between the tables; plaintiff tripped on base of frame extending into passage-way and concealed by drapes.); *Pond v. Jantzen Knitting Mills,* 183 Or 255, 190 P2d 141 (dim light; boxes and cloth on floor of passage-way.); *Pritchard v. Terrill,* 189 Or 662, 222 P2d 652 (clearly defective stairway and knowledge by defendant.); *Ralph v. MacMarr Stores,* 103 Mont 421, 62 P2d 1285 (box against counter and protruding into aisle.); *Sears-Roebuck & Co. v. Geiger,* 123 Fla 446, 167 So 658 (plaintiff walking in aisle used by patrons. Clothing caught by bicycle rack extending into the aisle.); *Shobert v. May,* 40 Or 68, 66 P 466 (cloudy day. Plaintiff walked into elevator well. A "trap case."); *Zoccali v. Carfi,* 128 Conn 168, 20 A2d 728 (open trap door in aisle of store.); *Bloomer v. Snellenburg,* 221 Pa 25, 69 A 1124 (obstruction constructed in floor nearly across the aisle.)

In another group of cases cited by plaintiff as involving some evidence of negligence, the facts showed a combination of a door immediately adjacent to a step: *Dunn v. First National Bank of Portland,* 149 Or 97, 39 P2d 944 (revolving doors with abrupt and sudden

drop-off in the immediate proximity of the revolving doorway. Entrance two to three inches above sidewalk door, rapidly revolving as plaintiff stepped out. Dissent by ROSSMAN, J., on ground that there was no evidence of negligence by defendant.); *Iden v. Zeeman Clothing Co.*, 50 Cal App2d 111, 122 P2d 626 (plaintiff walked from hallway of store into rest room. At door was 8¼ inch step-up. On coming out, she fell. Conflicting evidence as to adequacy of lighting. Verdict for defendant affirmed.); *Kern v. Great A. & P. Tea Co.*, 241 NY 600, 150 NE 572 (exit door with a sill and two steps down immediately outside. Whether sill was properly constructed and maintained held for jury.); *Simpson v. Doe*, 39 Wash2d 934, 239 P2d 1051 (ladies' lounge five inches lower than toilet room. Step at doorway to the latter. Dim light in lounge. On exit from toilet room plaintiff fell; "deceptively level appearance" of the floors was "overwhelmingly established.")

Two other cases cited by plaintiff involve location of soda fountain stools on narrow platforms fronting the counter; *Touhy v. Owl Drug Co.*, 6 Cal App2d 64, 44 P2d 405 (platform and floor were of same design, size and color. Court said plaintiff was deceived by the appearance.) *Walgren-Texas Co. v. Shivers*, 137 Tex 493, 154 SW2d 625 (stools on 24-inch platform 9¾ inches high with 11½ inches between stools raised jury question as to negligence. Narrow width and height of platform found to constitute negligence. Court called it a close case.)

These cases are all readily distinguishable.

Plaintiff cites a few cases involving low platforms, which approach more nearly to this case. Two are from North Carolina. In *Baskin v. Montgomery Ward*

& Co., (CCA 4th), 104 F2d 531, the defendant maintained counters, tables and platforms of uniform width, but of different heights. Bulky merchandise was displayed on platforms five or six inches high. There was a row of posts 12 inches square, and the tables and platforms were placed in rows with the posts. On one side of a post were high tables, and on the other side a low platform which projected beyond the post on each side. The platform was painted the same color as the floor. The low platform was at the intersection of two aisles so that as plaintiff walked westerly on one aisle and turned to the left on an intersecting aisle, she stumbled over the corner of the low platform. This appears to be another case of an obstruction to an aisle. There was a dispute in the evidence as to whether there was merchandise on the platform. The court held that under the law of North Carolina there was a question for the jury.

In *Hodge v. Weinstock, Lubin & Co.*, 109 Cal App 393, 293 P 80, a six-inch-high platform extended out into the aisle as much as a foot. The aisle was crowded with shoppers and plaintiff stumbled over the platform.

These cases are distinguishable.

Plaintiff relies upon *Kennedy v. Cherry & Webb Co.*, 267 Mass 217, 166 NE 562. In that case the north portion of the main floor of the store was eight inches higher than the south portion. An incline or ramp led down from the north to the south level for the use of the public. Abutting upon the ramp, and east thereof, a platform extended southerly on the upper level, ending in an eight-inch vertical drop at the lower end of the ramp. Plaintiff was descending on the ramp by one aisle, and turning to the east on another aisle at the bottom of the ramp, when she caught her toe on the

raised platform which was formed by the projection of the floor of the store at its upper level by the side of the incline. The store was at the time crowded with people attending a sale. It was held that the facts presented a jury question. Here again there was an obstruction to travel, upon, or so near to an aisle, that the jury could find that it should have been guarded.

*Lyons v. Lich,* 145 Or 606, 28 P2d 872, cited by plaintiff, is distinguishable. Plaintiff slipped upon a wet worn-smooth marble slab placed at the head of a flight of concrete steps, not equipped with a safety rail, in a dimly-lighted place, and at the threshold of swinging doors.

The last case among those cited by plaintiff which approaches the one at bar is *Thompson v. B. F. Goodrich Co.,* 48 Cal App2d 723, 120 P2d 693. Plaintiff entered the store through a door on the east side of the room which opened inward at the northeast corner of the room and swung against the north wall. An unoccupied platform 11½ inches high extended from the east wall at a point only seven inches to the left of the doorway and extended westerly into the sales room a distance of 47 inches. The evidence disclosed that upon entering through the doorway she was confronted by an easel-like advertising display rack, leaving a distance of only 35 inches between the bottom of the advertising rack and the corner of the low platform. As she passed through the door, the advertising rack was about 2½ feet away. To avoid the rack she turned to the left, and fell over the platform. It was held that there was some evidence of negligence. In that case there was a combination of a swinging door, a rack, and a low platform, all in close proximity. We think the case was rightly decided, but is distinguishable.

In determining whether there is any substantial evidence of negligence when the legal norm to be applied is reasonable care for the safety of invitees, the court is faced with a difficult and delicate task. On the one hand we must avoid encroaching upon the province of the jury, and on the other, we must avoid making an involuntary good samaritan out of every storekeeper. By reason of the infinite and subtle variations in the fact situation presented in the cases ranging from clear cases of negligence to equally clear cases of nonliability, the judicial channel between Scylla and Charybdis grows ever narrower, but the channel must be navigated and a line must be drawn.

■ We think the comparative simplicity of the facts in the pending case places it outside the purview of a jury, and requires a holding that there was no substantial evidence of negligence. Where a step maintained between one store level and another is combined with inadequate lighting, or is maintained in combination with folding or revolving doors, or is smooth, slippery and wet, or where free oil is allowed to remain in an aisle intended for public passage, or where a low platform protrudes into such an aisle, some well-considered authorities hold that it is for the jury to decide whether the storekeeper has failed to exercise reasonable care or whether he should have warned of hidden danger. Review of plaintiff's cases also indicates that a jury question may arise where the coloring or pattern of the floor-covering are the same on both floor levels, giving a "deceptively level appearance."

In the case at bar, the place was well lighted—the platform with exhibit was not in an aisle. It was plainly visible, to anyone who looked, and the aluminum strip, as well as the difference in color and pattern

between the store level and the platform level, gave adequate notice of the existence of the step.

In view of our conclusion that there was no substantial evidence of negligence on the part of the defendant, it becomes unnecessary to consider the very serious claim of contributory negligence.

The judgment is reversed and the case dismissed.